THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* ROBERT REINGOLD, Appellant.

Fourth Department, April 11, 1974.

*Nathaniel A. Barrell* (*Henrietta M. Wolfgang* of counsel), for appellant.

*Edward C. Cosgrove, District Attorney* (*John A. Joseph* of counsel), for respondent.

WITMER, J. P.  Defendant appeals from a judgment of Erie County Court convicting him upon a jury verdict of guilty of burglary in the first degree and grand larceny in the third degree and sentencing him to two indeterminate concurrent terms not to exceed 25 years and 4 years respectively, but both to run consecutively to a five-year Federal sentence recently imposed on him for conspiring to sell counterfeit currency. Defendant submits that several errors were committed upon his trial and contends that the judgment should be reversed.

Some facts of the crime and of the trial proceedings must be stated as basis for considering defendant's contentions.  On August 4, 1968 complainant, a 33-year-old woman, lived alone in a first-floor apartment in Williamsville, New York.  She retired at 2:00 A.M. with the door locked and windows open but screened.  She awoke at 3:00 A.M. and saw defendant standing at the foot of her bed.  The room was illuminated by flood-lights shining from the adjacent parking lot and by traffic on the Thruway.  Defendant had a knife and said that if she did not holler, she would not be hurt.  She told him to take what he wanted.  He said that he had, but since he unexpectedly found a nice lady there, he would take advantage of it, and he held the knife close to her throat.  She told him that she felt ill and needed to go to the bathroom, and she went there for five minutes, hoping that he would leave.  He kept his knife in the door so that she could not lock it.  While there she opened the door a bit and observed him for a few seconds.  She returned to the bedroom and he asked her to lie on the bed, and he proceeded to commit oral sodomy on her and then normal sexual intercourse.  After about a half hour in the room defendant left, and complainant called the police.  She discovered that her watch, valued in excess of $350, and $120 in cash were miss-

ing, and that the window screen had been cut and removed. She gave a statement to the Amherst police that morning. The police dusted the screen for finger prints and found a palm print thereon which later compared to defendant's palm. Complainant viewed three line-ups at the police department on December 28, 1968 and identified the defendant.

Defendant testified in his own behalf. In 1951, at the age of 16 years, he pled guilty to a charge of malicious mischief and was placed on probation. He violated his probation by not reporting and was sentenced to six months in the Erie County Penitentiary. In 1957 he pled guilty to an assault charge and in 1959 he pled guilty to stealing a safe and a car with two other men. In 1960 he pled guilty to attempted robbery in Ontario, Canada. He was armed with a pocket knife at that time and served 10 months. Defendant was convicted in Federal court in June of 1972 for conspiracy to sell counterfeit money to a secret service agent. Defendant testified that he was home with his wife on August 4, 1968; that he delivered milk to a store next door to complainant's apartment, and could possibly have touched her window screen in passing, and that could account for his palm print there.

Defendant's wife, to whom he was married on May 22, 1965 and by whom he has two children, testified in his behalf. She testified that on August 4, 1968 defendant was at home in bed with her, but she never told that to the police or the District Attorney.

Defendant was indicted on 24 counts, only the first five relating to the matter of the complainant. The other 19 counts related to similar crimes however. At defendant's request before the first trial began the court severed the last 19 counts of the indictment, and defendant proceeded to trial on the first five counts, to wit, first count, burglary in the first degree, entering complainant's dwelling with intent to rob; second count, same with intent to commit larceny; third count, same with intent to rape; fourth count, same with intent to commit sodomy; and fifth count, grand larceny in the third degree of a watch and cash. Defendant's first trial began in September, 1971. A *Wade* hearing preceded the actual trial, and the court ruled that the complainant's observations at the scene of the crime were not tainted by an illegal police line-up and were admissible at the trial. This ruling is not contested on this appeal. At the close of the People's case on September 24, 1971, the court dismissed Counts 1, 3 and 4 for insufficiency of proof, and the case proceeded on Counts 2 and 5. The jury deadlocked, and on

September 27, 1971 the court declared a mistrial and ordered a new trial.

For the retrial defendant retained new counsel. He demanded a new *Wade* hearing and that was denied. He demanded that the three counts (1st, 3rd and 4th) which were dismissed on the first trial be omitted from the charges on the new trial, but the court overruled him. He also asked to withdraw the request he made at the first trial for severance of the last 19 counts of the indictment, and asked that all counts, excepting the 1st, 3rd and 4th, be tried together; and the court denied that. The court also denied defendant's request that his handcuffs be removed when he was in the presence of the jury. The new trial began on November 22, 1972 and at the close of the testimony the court again dismissed counts 1, 3 and 4 for failure of proof. Only counts 2 and 5 went to the jury, and defendant was found guilty thereof and this appeal is from his sentence thereon.

Defendant contends that his retrial was prejudiced by the court also retrying him on counts 1, 3 and 4 of the indictment which had been dismissed by the court on the first trial before the case went to the jury. He argues that although on the second trial these counts were again dismissed before the case went to the jury, the District Attorney did not prosecute these counts in good faith, because he knew that he had no additional evidence to support them and was retrying them before the same Judge who had dismissed them on the first trial and presumably would again dismiss them; and that his purpose in re-presenting these charges was to prejudice the defendant in the eyes of the jury. We agree with this contention, and under these circumstances we find it was error to retry the defendant on these counts.

Defendant contends that the court erred in denying him a new *Wade* hearing before the retrial with his new counsel. This argument is without merit. We have held that in the absence of an allegation that new evidence exists as a ground for suppression, a defendant is not entitled to a second *Wade* hearing (*People* v. *Buthy*, 38 A D 2d 10, 13).

Defendant asserts that the court should have reconsolidated the additional 19 counts of the indictment upon the second trial. Subdivision 3 of CPL 200.20 provides in part that, "The court, in the interest of justice and for good cause shown, may, upon application of either a defendant or the people, in its discretion order that any one of such offenses or groups of offenses be tried separately from the other or others, or that

two or more thereof be tried together but separately from two or more others thereof ". While there is no statutory provision dealing with the consolidation of severed counts (CPL 200.20, subds. 4 and 5 deal with the consolidation of two or more indictments), it would appear that such a consolidation must be in the interest of justice and must rest in the discretion of the court. Good cause has not been shown why the severed counts should be reconsolidated, and in fact it appears that such a consolidation would work to the prejudice of defendant. Additional witnesses would have to be called who could lead the jury to the conclusion that defendant had a propensity to commit the offenses alleged (cf. *People* v. *Hayden,* 37 A D 2d 945). Accordingly, the court properly denied defendant's request to consolidate for the retrial the charges in the indictment.

On cross-examination the People questioned defendant regarding a previous conviction for attempted armed robbery in 1960. They questioned him regarding the knife that he used and also asked whether this was an attempted armed robbery on a Theresa Hillman, 21 years of age. Defendant contends that his examination as to the details of the prior conviction was intended to show his propensity for the crime charged, and that it was error.

A " defendant who chooses to testify may be cross-examined concerning any immoral, vicious, or criminal acts which have a bearing on his credibility as a witness " (*People* v. *Schwartzman,* 24 N Y 2d 241, 244). The offenses inquired into on cross-examination need not be similar to the crime charged nor are they to be limited in number so long as they have some basis in fact and are asked by the prosecutor in good faith (*People* v. *Williams,* 33 N Y 2d 904; *People* v. *Alamo,* 23 N Y 2d 630; *People* v. *Sorge,* 301 N. Y. 198). There are, however, limitations. The defendant cannot be questioned about a criminal charge on which he has been acquitted (*People* v. *Santiago,* 15 N Y 2d 640), and he cannot be asked whether he stands indicted of other crimes (*People* v. *Cascone,* 185 N. Y. 317). Likewise, a defendant cannot be questioned concerning immoral, vicious and criminal acts if the intent of such questions is to show from character or experience a propensity on the part of the defendant to commit the crime for which he is on trial (*People* v. *Zackowitz,* 254 N. Y. 192; *People* v. *Johnson,* 31 A D 2d 842; *People* v. *Moore,* 20 A D 2d 817).

The People quite properly asked defendant whether he had been convicted of attempted armed robbery. But when it inquired into the type of instrument used in the robbery, and

the age and sex of the victim, it was clearly trying to serve no other purpose but to show an inclination or tendency on the part of the defendant to commit the crimes for which he was on trial (see *People* v. *Johnson, supra*; *People* v. *Moore, supra*).

Furthermore, the People asked defendant if he knew each of the complainants in the remaining severed counts of the indictment and whether he committed the acts alleged therein. This also, defendant contends, was intended to show a propensity on the part of the defendant to commit the crimes alleged, and was not elicited for the purpose of impeaching his credibility. Moreover, the questioning of defendant regarding these severed counts of the indictment was inflammatory and prejudicial.

In *People* v. *Branch* (34 A D 2d 541, affd. 27 N Y 2d 834) the court held that it was prejudicial error to permit the prosecutor to question defendant about two other similar crimes allegedly committed by him and for which he had been indicted but not yet tried, since the intent of those questions was not to impeach defendant's credibility, but rather, to show that he had a propensity to commit the crime for which he was on trial. The same is true in the instant case. There is nothing in the record to indicate that there was any basis in fact for questioning defendant regarding the severed charges in the indictment, and the prosecutor's good faith in so cross-examining the defendant is subject to question. It was so improper and inflammatory that it made an impartial consideration of the competent evidence adduced at trial virtually impossible. While the defendant did not object to the impropriety of the cross-examination, we conclude that it was so prejudicial that in the interest of justice we should grant a new trial (*People* v. *Nuzzo*, 294 N. Y. 227; *People* v. *Neumuller*, 29 A D 2d 886; *People* v. *Moore*, 20 A D 2d 817, *supra*; and see CPL 470.15, subd. 3, par. [c]).

Apparently defendant was handcuffed throughout the course of the trial, and he contends that the court committed reversible error in denying his request that he not appear in the courtroom handcuffed.

The general rule with respect to shackling a prisoner at trial is stated in Corpus Juris Secundum (vol. 23, Criminal Law, § 977, pp. 905–907) as follows: " During the trial accused should, as a general rule, be free from shackles, except in so far as the trial court, in its sound discretion, deems them necessary to prevent the escape of accused or his forcible release, to restrain him from doing violence to others, or from injuring himself, or to prevent such misconduct as would obstruct the work of the

court * * *. *If accused is shackled without such necessity, it is reversible error,* unless it is clear that no prejudice in the minds of the jury was caused thereby '' (emphasis added). The above statement was quoted with approval in *People* v. *Mendola* (2 N Y 2d 270, 275).

In the instant case there is no evidence in the record of an escape by defendant or attempted escape or threat of escape, as was found in *People* v. *Mendola* (*supra*; and see *People* v. *Rittenhouse*, 37 A D 2d 866). While the question of securing the defendant in the courtroom rests within the sound discretion of the trial court, there must exist on the record testimony regarding the necessity for securing the defendant. No such testimony was taken in the instant case.

Where the facts relevant to the need to restrain the defendant are not developed at the trial, a post trial hearing on the matter must be had whereon testimony should be taken for the record regarding the reasons for restraining the defendant (*People* v. *Williams*, 36 A D 2d 1018). The court, therefore, erred in denying this motion without taking evidence to support the exercise of its discretion.

Defendant contends that the court erred when it permitted the testimony of a witness at the prior trial to be read into the record by allowing inadmissible statements to be used and by denying defendant's request that a reading of the cross-examination be waived.

A hearing had been held prior to the second trial at which time it was determined that Mrs. Doris Nicholson, a witness for the People, could not testify. The court, therefore, agreed that the testimony could be read into the record pursuant to subdivision 1 of CPL 670.20.

Prior to the reading of the testimony the defense counsel, the prosecution and the Trial Judge went through the testimony out of the presence of the jury, so that defense counsel could raise objections to the testimony. Certain of defendant's objections were sustained, while others were denied. The court erred in overruling defendant's objection to a leading question relating to the identification of defendant, since the last sentence of the section provides that the defendant, '' may register any objection or protest thereto that he would be entitled to register were the witness testifying in person, and the court must rule thereon ''. However, considering the other testimony elicited at the trial regarding the identification of defendant by complainant, this error was harmless.

Defendant moved to withdraw the entire cross-examination of Mrs. Nicholson by defense counsel at the first trial so that

it would not be read to the jury. The court denied this motion. It is defendant's position that since he can waive cross-examination of any witness, he should be able to waive the reading of cross-examination. CPL 670.20 (subd. 1) does not authorize such a waiver, and only permits defendant to register any objection or protest that he would be entitled to were the witness testifying in person. No objection has been raised to the competency of defendant's counsel in the first trial in cross-examining Mrs. Nicholson and no reason was given for the requested waiver. Nor does defendant state in what manner he was prejudiced by the reading of the cross-examination. Accordingly, there existed no basis for waiving the reading of the cross-examination, and defendant was not prejudiced thereby.

By reason of the errors committed by the court in retrying defendant upon counts one, three and four of the indictment and by reason of the cross-examination of defendant with respect to the specific facts of other crimes and wrongful acts committed by him similar in various details to the crime charged in this case, the judgment should be reversed and a new trial granted as to counts two and five of the indictment, and on such new trial if the court determines to keep defendant in handcuffs in the presence of the jury, it should take evidence of record as to the necessity therefor.

We find no merit in the remaining objections raised by the defendant.

CARDAMONE, SIMONS, GOLDMAN and DEL VECCHIO, JJ., concur.

Judgment unanimously reversed on the law and facts and a new trial granted.