KEVIN DICKSON, Appellant, v. THE STATE
OF NEVADA, Respondent.

No. 20972

January 2, 1992                    822 P.2d 1122

*Hager & Mausert* and *Gordon E. Logan,* Reno, for Appellant.

*Frankie Sue Del Papa,* Attorney General, Carson City; *Keith Loomis,* District Attorney and *Robert Estes,* Deputy District Attorney, Lyon County, for Respondent.

## OPINION

*Per Curiam:*

This is an appeal from a judgment of conviction, pursuant to a jury verdict, of one count of possession of a controlled substance. NRS 453.336. The district court sentenced appellant to eighteen months in the Nevada State Prison.

On April 26, 1989, Deputy Sheriff Jeroen Wynands went to a trailer with two other deputies for the purpose of arresting appellant on an outstanding warrant. Officer Wynands knocked on the door of the trailer, and appellant opened the door. Appellant gave a false name to the deputies and falsely stated that the man they were looking for was not at the trailer. Appellant consented to a search of the trailer. The deputies located a woman inside the trailer who correctly identified appellant as "Kevin." Appellant initially denied having any identification, but when Officer Wynands noticed a wallet in appellant's pants, appellant admitted that he was Kevin Dickson. Officer Wynands placed appellant under arrest, and proceeded with a "pat down" search. As a result of that search, Officer Wynands found a small plastic tube (a plastic pen barrel) in appellant's pocket. Based on his training, Officer Wynands believed that the plastic tube was of the type typically used to inhale controlled substances into the nose. Appellant did not exhibit any symptoms of being under the influence of methamphetamine.

The owner of the trailer was John Montagano. In March of 1989, John's son Jeff had been arrested on a drug charge at the very trailer where appellant was found. Jeff lived in the trailer for about eight months in 1988 and 1989. Jeff had drug paraphernalia at the trailer which included five or six pen barrels that Jeff had broken or cut in half to use for ingesting methamphetamine. Jeff identified the plastic tube as a pen barrel that he had modified for the ingestion of methamphetamine.

Richard A. Smith, a criminalist for the Washoe County Sheriff's Department, washed the plastic tube with a dilute solution of sulfuric acid. An infrared test on the solution indicated the presence of less than one one-hundredth of a gram of methamphetamine.

Appellant testified that on the day he was arrested he had been cleaning the trailer and had picked up the pen barrel along with some loose change and screws so they would not be sucked up in the vacuum cleaner.

As appellant was transported to the courthouse, at least one of the prospective jurors saw him in chains. This fact was brought out during the district court's examination of the prospective jurors, and was discussed in front of all of the prospective jurors. The prospective jurors were admonished not to allow the incident to affect them. Counsel for appellant made further inquiry of the jury regarding this incident and two jurors indicated that they felt sorry for appellant because he had been brought to court in chains. One juror indicated that it would be "hard" to weigh the evidence fairly because of this incident. Both sides passed the jury for cause. Because the jurors answering questions are not identified in the transcript, it is not possible to determine from the record whether any juror who saw appellant in chains was excused as a result of a peremptory challenge. Appellant's motion for a mistrial was denied.

Appellant contends, and the state concedes, that it was error to allow the jury to see appellant in chains. We agree. "A criminal defendant clearly has the right . . . to appear before his jurors clad in the apparel of an innocent person." Grooms v. State, 96 Nev. 142, 144, 605 P.2d 1145, 1146 (1980) (citations omitted); *see, generally,* Illinois v. Allen, 397 U.S. 337 (1970) (the sight of shackles might have a significant effect on the jury's feelings about the defendant, and requiring a defendant to appear in shackles could have an impact on the defendant's Sixth Amendment rights).

The state argues, however, that the error was harmless. When an error in a trial infringes on a defendant's constitutional rights, the error may be deemed harmless only if the appellate tribunal is "able to declare a belief that it was harmless beyond a reasonable doubt." Chapman v. California, 386 U.S. 18, 24 (1967).

Based on our review of the record on appeal, we cannot conclude that the error in this case was harmless beyond a reasonable doubt. While the dissent cites cases from other jurisdictions, we are bound to follow the law in Nevada. In *Grooms,*

which governs this type of case, this court was willing to conclude that the error was harmless based on a review of the entire record. In the instant case, however, the error is more egregious, and the case against appellant closer, than in *Grooms*.

First, all of the jurors were informed that appellant was seen by at least one juror in chains. While not all of the jurors actually saw appellant in chains, the incident was discussed at length in front of all the jurors in voir dire. As noted above, at least one juror indicated that it would be "hard" to weigh the evidence fairly because of this incident. Other jurors indicated that they felt sympathy for appellant because of seeing him in chains. Accordingly, we cannot say that seeing appellant in chains had no effect on the jury.

Further, we note that the evidence against appellant was extremely close. The amount of methamphetamine found in the pen barrel was minuscule. At oral argument, the state conceded that it would have been impossible for anyone without scientific equipment to have known that there was methamphetamine inside the pen barrel. The pen barrel was admittedly the property of Montagano, a known drug user. Under these circumstances, we cannot conclude that the error was harmless beyond a reasonable doubt. Accordingly, we reverse the judgment of conviction.[1]

MOWBRAY, C. J., dissenting:

Respectfully, I dissent.

Appellant Kevin Dickson was lawfully arrested at a house trailer on an outstanding warrant. A "pat down" search revealed a small plastic tube containing a white powdery residue. Laboratory analysis later identified the residue as methamphetamine.

In Watson v. State, 88 Nev. 196, 198, 495 P.2d 365, 366 (1972), this court concluded that minute quantities of a narcotic could not support the intent element of the crime of possession of a controlled substance. *See also* Beutler v. State, 88 Nev. 707, 709, 504 P.2d 699, 700 (1972). However, Watson was tried before the 1971 amendment to NRS ch. 453. *Watson* at 198 N.2, 495 P.2d at 366 n.2.[1] The current provisions of NRS 453.570 provide as follows:

> Amount of controlled substance needed to sustain conviction for prohibited offense. The amount of a controlled

---

[1] In light of our disposition of this appeal, we decline to consider appellant's contention that there was insufficient evidence to sustain the jury's verdict.

[1] The case of Beutler v. State, 88 Nev. 707, 505 P.2d 699 (1972), followed the holding of Watson v. State, 88 Nev. 196, 495 P.2d 365 (1972); however, Beutler's conviction also preceded the 1971 amendment to NRS ch. 453.

substance needed to sustain a conviction of a person for an offense prohibited by the provisions of NRS 453.011 to 453.552, inclusive, is that amount necessary for identification as a controlled substance by a witness qualified to make such identification.

In *Sheriff v. Benson*, 89 Nev. 160, 509 P.2d 554 (1973), this court interpreted NRS 453.570 in light of *Watson* and reasoned that "[t]he quantity of controlled substance to support the intent necessary to establish the crime of possession is vital only in the absence of other evidence of intent." *Id.* at 163, 509 P.2d at 556. The *Benson* court then concluded:

When there is present in the record other evidence of intent to commit an offense prohibited by NRS ch. 453, then all that is needed to sustain a conviction is that amount of controlled substance necessary for identification. Where there is a total absence of other evidence to establish the intent to commit an offense prohibited by NRS ch. 453 then the rule announced in *Watson* is controlling.

*Id.*

I conclude that the standard articulated in *Benson* is the standard that should be followed in this case. I likewise believe that if *Benson* is followed, Dickson's conviction should be affirmed by this court.

At trial, Dickson asserted that he did not intend to possess the methamphetamine. He testified that he had picked up a small tube—described as a pen barrel—while he was vacuuming the floor, and that he had placed it in his pocket without knowledge of its contents.

However, Dickson's friend testified on rebuttal that he had seen Dickson "involved" with methamphetamine in Dickson's home. Further, Dickson admitted that he had seen the friend use a pen barrel to ingest methamphetamine. Therefore, it was reasonable for the jury to conclude that Dickson knew that the white powdery substance in the pen barrel was methamphetamine.

Based on the above evidence, I strongly disagree with the majority's conclusion to reverse this case simply because a prospective juror saw Dickson in chains outside the courtroom. The incident occurred as Dickson was being brought into the courthouse, prior to trial. When a juror later brought this to the attention of the court, the District Judge adequately admonished the jury.[2] Dickson's counsel had an opportunity to question the

---

[2]The judge explained: "Many times a defendant will be arrested and not able to make bail, and that's a fact of finances. And if he can't make bail he's in jail, [sic] that has nothing to do with his guilt or innocence." At the conclusion of the trial, the trial judge further admonished:

jurors on voir dire. Two jurors expressed sympathy for Dickson. One juror stated: "I feel bad for him if he's not guilty which he's already presumed not to be. . . ." There was no evidence indicating any prejudice against Dickson resulting from the incident. Consequently, I see no reason to depart from this court's holding in Grooms v. State, 96 Nev. 142, 144-145, 605 P.2d 1145, 1147 (1980), wherein we concluded "that any prejudice that resulted from the viewing was cured by the scrupulous conduct of the district judge in ensuring that jurors were not influenced by the error."

I firmly support the view that "[i]t is a far-fetched conjecture that jurors under oath would spontaneously harbor prejudice immediately upon seeing a defendant brought to court in manacles." State v. Hashimoto, 377, P.2d 728, 734 (Haw. 1962). Furthermore, I believe my honorable colleagues should adhere to the following counsel provided by the Washington Supreme Court:

> In addition, we must indulge some presumptions in favor of the integrity of the jury. It is a branch of the judiciary, and if we assume that jurors are so quickly forgetful of the duties of citizenship as to stand continually ready to violate their oath on the slightest provocation, we must inevitably conclude that a trial by jury is a farce and our government a failure.

State v. Grisby, 647 P.2d 6, 15, (1982), *cert. denied,* 459 U.S. 1211 (1983) (quoting State v. Pepoon, 114 P. 449, 453 (Wash. 1911)).

An inadvertent incident where a juror sees a defendant outside a courtroom in handcuffs or chains cannot be anything more than harmless error, absent a showing of prejudice. *See* Hamrick v. People, 624 P.2d 1320, 1323 (Colo. 1981); State v. Pendergrass, 615 P.2d 201, 205 (Mont. 1980); Snyder v. State, 738 P.2d 548, 550 (Okla. 1987). As heretofore noted, the jurors expressed sympathy for Dickson and the record does not provide any evidence of prejudice. Furthermore, I cannot agree with my distinguished colleagues that the case against Dickson was "extremely close." Upon hearing the testimony of Dickson and other witnesses, the jury returned a guilty verdict. The evidence is sufficient to support the jury's conclusion that Dickson inten-

---

As jurors it is your exclusive duty to decide all questions of fact submitted to you for the purpose of determining the effect and value of the evidence. In performing this duty, you must not be influenced by pity for the defendant or by passion or prejudice against him. You must not be biased against the defendant because he has been arrested for this offense or because he has been brought to trial.

tionally possessed methamphetamine. Therefore, I would conclude that the error by the State was "harmless beyond a reasonable doubt." Chapman v. California, 386 U.S. 18, 24 (1967); *see also* Hendee v. State, 92 Nev. 669, 670, 557 P.2d 275, 276 (1976); NRS 177.255. Accordingly, I reject the majority's conclusion to the contrary.