A00A1696. WELDON v. THE STATE.
(543 SE2d 56)

PHIPPS, Judge.

Ronnie Weldon was convicted of sale of cocaine, possession of cocaine with intent to distribute, and obstruction or hindering a law enforcement officer. He was sentenced to serve 45 years in prison. We reverse Weldon's convictions and remand the case for a new trial because we find that the trial judge abused his discretion in the manner in which he attempted to control Weldon's disruptive behavior.

When Weldon was brought into the courtroom for trial he moved for appointment of new counsel because he claimed that the public defender assigned to represent him had never visited him during the 11 months he had been incarcerated and had neither investigated his case nor properly prepared a defense. The judge denied the motion based on representations from the public defender and an investigator that the public defender or another attorney from the public defender's office had visited Weldon once and that the investigator

[24] OCGA § 16-5-24 (a).
[25] *Martin*, supra.
[26] See id.

had visited Weldon at least three times. Weldon asserted that he did not want the public defender to represent him, that he wanted a new attorney and that his rights would be violated if he was forced to go to trial under the circumstances. The judge repeatedly admonished Weldon and threatened to bind and gag him, but Weldon refused to sit quietly, stating that he feared the record would reflect that he had acquiesced in the trial.

The jury panel was brought in. When asked if he was ready to proceed, Weldon protested the trial and requested a new lawyer. In the presence of the jury, the judge again denied Weldon's requests and admonished him several times. The judge said, "We can do this two ways, you can sit here and behave or I'll have you bound and gagged in front of this jury and you won't be able to open your mouth until I tell you you can." When Weldon refused to allow the lawyer to pick a jury for him, the judge responded, "Go get the chain and the gags." Then he ordered Weldon removed from the courtroom and said to the jury, "[L]adies and gentlemen, you see the problem I have."

The jury was sent out, and Weldon was returned to the courtroom bound and gagged. The gag was removed so that Weldon could discuss with the judge whether he would sit quietly. But Weldon refused to agree to remain quiet.

When the jury panel was brought back into the courtroom for voir dire, Weldon had been unhandcuffed and ungagged. Almost immediately, Weldon interrupted the proceedings by restating his request for a new attorney. The judge then ordered Weldon gagged in the presence of the jury.

Thereafter, he sat gagged through a portion of the voir dire. After the jurors had identified themselves, the judge explained to the jury the role of the court in maintaining courtroom decorum and stated his reasons for binding and gagging Weldon. In part, the judge stated that he "ha[d] made every effort to ask the defendant to be quiet and give him the full opportunity to talk when it's his turn to talk." The judge detailed his findings regarding visits with the defendant by the public defender's office. Then the judge asked the prosecutor to read into the record legal authority regarding the court's options in controlling an obstreperous defendant.

Afterward, still in the presence of the jury, the judge asked Weldon whether he would be quiet and ordered that the gag be removed so that Weldon could answer. After a lengthy discussion between Weldon and the judge in the presence of the jury, Weldon refused to discontinue his protests of the trial, and the judge ordered Weldon removed from the courtroom. Weldon disrupted the proceedings with verbal protests. The record does not show that he made any threats or engaged in any violent conduct.

After the jury had been selected, Weldon was returned to the

courtroom. After a lengthy admonition from the judge in the presence of the jury, Weldon promised to speak only when court procedures allowed for defense presentations. He was allowed to stay in the courtroom and participate in the proceedings as co-counsel until he left with the judge's permission during the presentation of the defense's case. Weldon did not return until the verdict was announced.

1. Both the state and federal constitutions protect the right of an accused to be tried by an impartial jury.[1] And

> [i]t is well established that the accused, while in the presence of the jury, should be free of indicia of guilt such as wearing shackles or prison garb, or being surrounded by uniformed security personnel, or anything else that might infringe upon the presumption that he is innocent. . . . One accused of a crime is entitled to have his guilt or innocence determined solely on the basis of the evidence introduced at trial, and not on the grounds of official suspicion, indictment, continued custody or other circumstances not adduced as proof at trial.[2]

However, circumstances may arise which necessitate action by the trial judge to control an obstreperous or disruptive defendant. *Illinois v. Allen*[3] is the seminal case on the constitutionality of measures to control a disruptive defendant. Citing *Allen*, the Georgia Superior Court Benchbook, Part I: Criminal, provides guidelines for a judge faced with a disruptive defendant. Out of the presence of the jury, the judge should patiently explain and warn the defendant of the possible consequences of such conduct and the steps that may be taken against the defendant, including: (a) being cited and punished for contempt; (b) being excluded from the courtroom until the judge is assured of proper conduct and (c) being bound and gagged but allowed to remain in the courtroom.[4] Abuse of discretion is the test on appeal.[5]

Although binding and gagging a defendant may be constitutionally acceptable in certain circumstances, the United States Supreme Court and the courts of this State have observed that it is likely to have a significant prejudicial impact upon the jury and generally is

---

[1] United States Const., Sixth Amendment; Ga. Const. 1983, Art. I, Sec. I, Par. XI.

[2] (Citations and punctuation omitted.) *Mapp v. State*, 197 Ga. App. 7 (397 SE2d 476) (1990).

[3] 397 U. S. 337, 343-344 (90 SC 1057, 25 LE2d 353) (1970).

[4] Council of Superior Court Judges of Georgia, Criminal Benchbook, § 13.11 (July 2000 supp. to 1995 ed.).

[5] *Pace v. State*, 212 Ga. App. 489, 490 (1) (442 SE2d 307) (1994).

less preferable than removing the defendant from the courtroom.[6] In *Allen*, the United States Supreme Court explained:

> Trying a defendant for a crime while he sits bound and gagged before the judge and jury would to an extent comply with that part of the Sixth Amendment's purposes that accords the defendant an opportunity to confront the witnesses at trial. But even to contemplate such a technique, much less see it, arouses a feeling that no person should be tried while shackled and gagged *except as a last resort*. Not only is it possible that the sight of shackles and gags might have a significant effect on the jury's feelings about the defendant, but the use of this technique is itself something of an affront to the very dignity and decorum of judicial proceedings that the judge is seeking to uphold. Moreover, one of the defendant's primary advantages of being present at the trial, his ability to communicate with his counsel, is greatly reduced when the defendant is in a condition of total physical restraint.[7]

Although the record shows beyond dispute that Weldon was obstreperous in unceasingly proclaiming that he was entitled to a different lawyer and that his rights were being violated, we cannot find that the trial judge properly exercised his discretion in the manner in which he attempted to control Weldon. The record does not indicate that binding and gagging were used as a last resort among reasonable and less prejudicial alternatives, which included removing him from the courtroom until he was willing to be present without disruption.

The beginning of the proceedings suggests the immediacy with which the judge resorted to binding and gagging Weldon. As Weldon attempted to inquire why he had been brought to court, the following dialogue occurred:

> [WELDON]: Excuse me, Judge Johnston —.
> [THE COURT]: You will be heard from when I ask you. Let me tell you something. You're going to sit down and keep your mouth shut until I ask you to talk. If you don't, I'll have you chained and put in handcuffs, do you understand that?
> [WELDON]: I understand that, sir, but I —.
> [THE COURT]: Then keep your mouth shut until I ask you

---

[6] See *Allen*, supra, 397 U. S. at 344; *Sanders v. State*, 242 Ga. App. 487, 490 (1) (c) (530 SE2d 203) (2000) (prejudicial impact); *Fletcher v. State*, 252 Ga. 498, 501, n. 2 (314 SE2d 888) (1984) (preferable to remove defendant).

[7] (Emphasis supplied.) 397 U. S. at 344.

to be heard from. The way the order of the court works is that we hear from the State first, then we hear from the defendant. Is that clear?

[WELDON]: All right. But what —.

[THE COURT]: Is that clear?

[WELDON]: Yes, sir, but I'm like what is this —.

[THE COURT]: Then be quiet.

[WELDON]: I'd like to know what's going on, you know what I'm saying.

[THE COURT]: I'm going to tell you in a minute, be quiet.[8]

The judge then proceeded to conduct a similar transactions hearing before answering Weldon's question whether he was in court for a trial.

We find that the necessity for measures to control Weldon's outbursts probably was heightened by the judge's response to his motion for new counsel. When the defendant seeks new counsel on the basis of ineffectiveness of currently appointed counsel, "the trial court, in order to insure that the defendant's Sixth Amendment right has been and will continue to be afforded, should conduct 'a hearing as to the basis of the defendant's motion. . . .' [Cit.]"[9] "[T]he Sixth Amendment requires more than 'a perfunctory, surface inquiry to determine the truth and scope of (the) allegations.' [Cit.]"[10]

The judge's inquiry into Weldon's claims was perfunctory at best. He merely asked the public defender and an investigator for the public defender's office whether and how many times they had visited with Weldon and whether the charges had been explained to him. But the record shows that in addition to asserting that the public defender had never visited him, Weldon complained that he wished to have evidence and witnesses subpoenaed for his defense and that he had wanted to file a motion to suppress. A more thorough inquiry into Weldon's complaints might have served either to demonstrate their merit or to assure Weldon that his attorney was adequately prepared to defend him.[11]

Finally, we find that the judge's extensive discussions of Weldon's conduct, admonishment of him and orders to restrain him, all of which took place in the presence of the jury, and the judge's comment to the jury about Weldon's conduct exacerbated the damage likely done to the jury's impartiality and Weldon's presumption of

---

[8] The record begins with this dialogue and does not show any previous obstreperous behavior by Weldon.

[9] *Heard v. State*, 173 Ga. App. 543, 544 (1) (327 SE2d 767) (1985).

[10] Id. at 545.

[11] The attorney had not filed a suppression motion.

innocence by Weldon's own conduct. Unnecessarily, it seems, the jury repeatedly was allowed to hear lengthy colloquies wherein Weldon impugned the preparation and professionalism of his trial counsel and wherein the judge continuously threatened him with being bound and gagged or removed. In the jury's presence the judge suggested several times that Weldon was being unreasonable, lacked knowledge of the legal process and was being untruthful in his allegations that trial counsel had never visited him.

Moreover, we are concerned with how the jury might have been affected by an unnecessarily high level of physical control exhibited over Weldon in its presence — removing him with orders to chain and gag him, gagging him in the presence of the jury, admonishing him while he sat gagged, removing the gag for his response to "will you be quiet and only talk when I ask you or when it's your turn to talk?", removing him from the courtroom when he did not promise to be quiet, evoking a promise upon his return that he would be quiet and stating that if he did not the judge would remove him again.[12]

The combination of these factors compels us to find that the trial court abused its discretion in the manner in which it attempted to control Weldon's disruptive behavior. Thus, we reverse and remand for a new trial.

2. We will discuss other issues raised by Weldon in this appeal insofar as they may affect subsequent proceedings below.

(a) After Weldon agreed to discontinue his protests of the trial, the judge allowed him to participate in his defense as co-counsel and to examine witnesses. He contends that the court erred in allowing him to proceed while acting as his own attorney and with appointed counsel.

Although the Georgia Constitution no longer provides a criminal defendant the right to act as co-counsel in his trial, trial courts have the discretion to allow such hybrid representation.[13] However, as when the defendant elects to proceed pro se, the record in such a case should reflect that "[the defendant's] choice to proceed as co-counsel was 'made after [he] was made aware of his right to counsel and the dangers of proceeding without counsel.' [Cits.]"[14] The record does not show that Weldon was so advised. At any future trial of this case, the record should show that such advice was given to Weldon before he is

---

[12] The Georgia Superior Court Benchbook provides, "if restraining devices are visible, the jurors should be instructed that such restraint is not to be considered in weighing evidence or determining the issue of guilt." Council of Superior Court Judges of Georgia, Criminal Benchbook, § 13.11 (b) (ii) (July 2000 supp. to 1995 ed.); but see *Kitchen v. State*, 263 Ga. 629, 630 (1) (436 SE2d 645) (1993) (trial court did not commit reversible error by failing to give unrequested curative instruction where restraint was otherwise lawful).

[13] *Hance v. Kemp*, 258 Ga. 649, 650 (1) (373 SE2d 184) (1988).

[14] Id.

allowed to participate as counsel.

(b) Next, Weldon argues that the trial court erred in admitting into evidence guns, scales, plastic bags and razors seized at the house where he was arrested. Essentially, Weldon contends those items were not relevant to the prosecution of his charges because he did not live at the house, his name was not listed on the search warrant which precipitated the seizure and the items were not found in proximity to him or to a quantity of drugs.

This argument is without merit.[15] The evidence showed that when officers executed the search warrant, Weldon locked them outside and entered a bathroom where he was found washing cocaine down a sink and flushing down the toilet a substance that appeared to be cocaine. A reasonable juror could have inferred that Weldon was a participant in the illegal drug activity taking place inside the house. And items such as small plastic bags, razors, scales and guns were relevant to the scope of the illegal activity, i.e., whether it was only possession of drugs or distribution as well.[16]

(c) We need not address the remaining errors enumerated by Weldon because it is unlikely that resolution of them would affect subsequent proceedings below.

*Judgment reversed and case remanded. Johnson, C. J., and Smith, P. J., concur.*

DECIDED NOVEMBER 28, 2000.

*William J. Mason*, for appellant.
Ronnie Weldon, *pro se.*
*J. Gray Conger, District Attorney, Eddie B. Bassett, Assistant District Attorney*, for appellee.

---

[15] See *Mason v. State*, 146 Ga. App. 557, 558 (3) (247 SE2d 118) (1978).
[16] See *McKeever v. State*, 196 Ga. App. 91, 94 (5) (395 SE2d 368) (1990) (weapons relevant to intent to conceal and protect illegal substance which defendant was charged with possessing and distributing).