No. 3--02--0402

_________________________________________________________________

 IN THE

 APPELLATE COURT OF ILLINOIS

 THIRD DISTRICT

 A.D., 2005

THE PEOPLE OF THE STATE ) Appeal from the Circuit Court

OF ILLINOIS, ) of the 12th Judicial Circuit

 ) Will County, Illinois

Plaintiff-Appellee, ) 

)

v. ) No. 01--CF--902

 ) 

ANTHONY M. JOHNSON, ) Honorable                      

 ) Gerald R. Kinney,

Defendant-Appellant. ) Judge, Presiding

_________________________________________________________________

JUSTICE HOLDRIDGE delivered the Opinion of the court: _________________________________________________________________

Following a jury trial, defendant, Anthony M. Johnson, was convicted of attempted robbery and aggravated battery (720 ILCS 5/8--4(a), 18--1(a), 12--4(b)(8) (West 2000)).  He was sentenced to eight years’ imprisonment and given credit for 357 days of presentence incarceration.  Defendant appeals, arguing that (1) the trial court erred when it denied his mid-trial request to remove an el
ectronic security belt, and (2) he is entitled to one additional day of presentence custody credit.    

On appeal, the defendant maintains that he is entitled to a new trial because the trial court erred in denying his request to remove an electronic security belt prior to his testimony.  Defendant contends that the trial court’s determination not to order removal of the electronic security belt cannot be sustained under the "manifest need" test adopted for physical restraints in 
People v. Boose
, 66 Ill. 2d 261 (1977).  The state responds that (1) the electronic security belt is not a "restraining device," (2) the court did not abuse its discretion in ruling on the defendant’s request, or (3) any error was harmless beyond a reasonable doubt.  All three of these arguments were recently rejected by this court in 
People v. Martinez
, ____ Ill. App. 3d ____, 808 N.E.2d 1089 (
2004).

In 
Martinez
, this court was confronted with the use of a similar electronic security belt and concluded that the belt was a restraining device subject to the manifest need test articulated in 
Boose
.  
Martinez
, 808 N.E.2d at 1091
.  In 
Martinez
, this court determined that the trial court abused its discretion when it failed to consider the factors articulated in 
Boose
 for determining the propriety of using restraining devices.  
Martinez
, 808 N.E. 2d at 1092
.  
Martinez
 held that the trial judge must make the determination as to whether physical restraint of a defendant is necessary, and further held that the trial court’s decision on the matter would not be overturned absent an abuse of discretion.  
Martinez
, 808 N.E. 2d at 1093.

We find it necessary at this point to comment upon what 
Martinez
 did 
not
 hold.  It did not hold that stun belts cannot be used to restrain a potentially dangerous defendant.  Although that position was articulated in the special concurrence it was not part of the holding of the court.  
Martinez
, 808 N.E.2d at 1093 (Justice McDade, specially concurring).  Rather, relying squarely upon the sound reasoning in 
Boose
, the 
Martinez
 opinion simply reiterated the timeless adage that the trial judge is in charge of his or her courtroom and any decision regarding courtroom procedures, including physical restraint of the defendant, must be made by the judge.  
Martinez
, 808 N.E. 2d at 1091.  This is hardly a novel or radical concept.  See, 
People v. Hill
, 17 Cal. 4
th
 800, 952 P.2d 673 (1998) (it is the trial court, not law enforcement personnel, that must make the decision that the defendant be physically restrained in the courtroom, and the trial court abuses its discretion if it abdicates this decision making responsibility to law enforcement personnel); 
State v. Moen
, 94 Idaho 477, 491 P.2d 858 (1971) (although sheriff has some initial responsibility for determining whether a defendant should be physically restrained during trial, the trial judge, in fulfilling his or her duty to preside over the trial, must decide the question); 
State v. Evans
, 169 N.W.2d 200 (1969, Iowa S Ct) (trial judge misconceived his authority and duty by stating that the matter of physical restraint of the defendant was solely to be handled by the sheriff and that the trial judge had no control over the physical restraint of the defendant); 
State v. Merrell
, 170 Or. App. 400, 12 P.2d 556 (2000) (although sheriff may provide helpful and necessary information regarding the need to apply physical restraining devices to a defendant, the trial court may not simply accept the conclusions of others, but must make an independent determination that restraint is justified).  See also, 
State v. Woolcock
, 201 Conn 606, 518 A.2d 1377 (1986);  
Whittlesey v. State
, 340 Md. 30, 665 A.2d 223 (1995); 
Commonwealth v. Brown
, 364 Mass 471, 305 N.E.2d 830 (1973). 

Since it is clearly established that the trial judge, in his or her own sole discretion, must determine whether physical restraint of the defendant is necessary, the next question is whether the trial judge abused that discretion.  In order for a court of review to answer that question, the trial judge must state for the record the reasons for the restraint and must give the defendant’s attorney an opportunity to present reasons why the defendant should not be restrained.  
Martinez
, 808 N.E. 2d at 1091, citing 
People v. Buss
, 187 Ill. 2d 144, 216 (1999). 
Factors to be considered by the trial judge in making this determination include
: 

the seriousness of the present charge against the defendant;  defendant's temperament and character;  his age and physical attributes;  his past record; past escapes or attempted escapes, and evidence of a present plan to escape; threats to harm others or cause a disturbance;  self-destructive tendencies; the risk of mob violence or of attempted revenge by others;  the possibility of rescue by other offenders still at large;  the size and mood of the audience; the nature and physical security of the courtroom;  and the adequacy and availability of alternative remedies."
  
Martinez
, 808 N.E. 2d at 1091, citing 
Boose
, 66 Ill. 2d at 265-66.

        The 
Martinez
 court, again relying upon our supreme court’s decision in 
Boose
, held that an error in the decision to physically restrain a defendant impacts upon the fundamental right to a fair trial, and thus cannot be harmless error.  
Martinez
, 808 N.E.2d at 1093, citing 
Boose
, 66 Ill.2d at 268.  

Here, the trial court noted that the defendant had a past history of convictions involving aggressive conduct, but it does not appear from the record that the trial court considered any of the other factors articulated in 
Boose
. Since a full 
Boose
 analysis is necessary under such circumstances, the trial court’s treatment of the issue was incomplete.  As the 
Martinez
 court noted, such error cannot be deemed harmless.  However, rather than proceeding immediately to a new trial, this problem can be remedied by remanding the case to the trial court for a retrospective 
Boose
 hearing.  If the hearing reveals an adequate basis for having used the stun belt, then the defendant’s conviction should stand.  If, however, the 
Boose
 analysis does not favor using the belt, then a new trial would be indicated.  
Cf.
 
Childers v. State
, 782 So.2d 513, 518 (2001)(no formal hearing on the use of physical restraints is necessary, but where there is a total lack of a record, the decision should be remanded for a hearing); See also, 
People v. Williams
, 36 App. Div. 2d 1018, 321 NYS 2d 463 (1971)(where the facts relevant to the needs of restraint of defendant are not sufficiently developed at trial, a post-trial hearing should be held on that issue); 
People v. Reingold
, 44 App. Div. 2d 191, 353 NYS2d 978 (1974)(post-trial hearing must be had, wherein evidence should be presented for the record regarding reasons for restraining the defendant).  

We hold that, in all cases where the trial court fails to employ a proper 
Boose
 analysis before imposing physical restraints, the matter may be remanded to the trial court to conduct a hearing wherein the reasons for and against the restraints are argued, and the reasons underlying the judge’s decision are placed in the record.  In so holding, we are confident that in the future the need for such post-trial proceedings will be very limited.  Future decisions to physically restrain a defendant, by whatever means, must be made by the trail judge and adequately supported in the record.  If those two requirements are met, the trial judge may rest assured that his or her decision to control the courtroom will be granted appropriate deference and would only be overturned upon a showing of an abuse of that discretion.   

As the defendant makes no other claims of error regarding his conviction, we affirm the conviction, subject to remand.  We note that the State has conceded that the defendant’s sentencing order should reflect the additional day of credit and we so order. 

For the reasons articulated above, we remand the matter for a post-trial hearing on the decision to restrain the defendant.  

Affirmed in part and remanded for further proceedings.

SCHMIDT, J., specially concurring, and LYTTON, J., dissenting, with dissent to follow.

JUSTICE SCHMIDT, specially concurring:                       

________________________________________________________________

While I concur, I write separately.  
Because the majority did not discuss the facts leading up to defendant's conviction, I will do so here.  

The record shows that on the third day of trial, before defendant took the witness stand in his own defense, defense counsel informed the court that defendant was wearing an electronic security belt.  Counsel requested that the belt be removed.  He noted that defendant had not been misbehaving in court, but he was acting a little shaky.  Counsel attributed defendant's shakiness to his medical circumstances and argued that a shaky gesture could be misinterpreted by security personnel as a signal which could result in defendant's being shocked in front of the jury.  Counsel also expressed his own apprehension about sitting next to defendant in the event the device were activated.  The prosecutor stated that he had not noticed the belt, and he felt certain that the jurors were unaware that it was being worn.  The prosecutor objected to removing the belt if the sheriff's office deemed it a necessary security measure.  The prosecutor commented that the sheriff's deputy was in the courtroom; however, the officer was not called to testify or explain why the belt was being used.

Before ruling on defendant's motion, the judge observed that defendant had prior convictions involving aggressive conduct and that the belt, unlike handcuffs or shackles, did not give the appearance that defendant was in custody.  The judge stated that no one wearing the device had ever been shocked in his courtroom.  He believed that the belt served as a reasonable deterrent to "any kind of acting out."  Accordingly, defendant's motion to remove the belt was denied.

The State's evidence established that defendant entered a Subway restaurant in Bolingbrook on June 6, 2001, around 6 p.m. and stayed until it closed at 9 p.m.  Alpha Patel testified that she had started working at the restaurant only a week earlier, and she was working alone in the restaurant that evening.  She said that while she was cleaning up at closing time, defendant grabbed her mouth and throat from behind and pushed her into the washroom.  He demanded money and the tape from the restaurant's video surveillance system.  Patel screamed, alerting employees of the business adjoining the restaurant, who called the police.  Defendant dragged Patel to the back room of the restaurant, where he ordered her to give him identification documents from her purse and then ordered her to open the cash register.

When 
Bolingbrook police arrived, they found Patel behind the counter crying.  She was trying to push buttons on the cash register.  She indicated that there was a man in the back.  As the officers approached the door marked "employees only" that led to the area behind the counter, defendant stepped or jumped through the door from the employee area.  Police ordered defendant to the floor and then handcuffed him.  Once Patel was interviewed, defendant was arrested and removed from the building.  Patel's social security card and driver's license were found on the floor of the back room. Patel also authenticated photographs of scratches on her neck which she says she received in the attack.  

Defendant testified that he was waiting in the restaurant for his girlfriend.  He said Patel started screaming and flailing her arms around when he exited the public washroom around 9 p.m.  Defendant said he grabbed Patel by the arms to calm her down and protect himself.  He put his hand over her mouth to stop her screaming, but denied grabbing her neck.  He never explained his presence in the "employees only" area behind the counter.  Defendant denied that he tried to rob Patel. 

Based on the evidence, the jury found defendant guilty of attempted robbery and aggravated battery, as charged.

Electronic Security Belt

On appeal, defendant first argues that he is entitled to a new trial because the trial court erred in denying his request to remove the electronic security belt before he testified.  Defendant contends that the trial court's determination, based solely on defendant's prior convictions for offenses involving violence, cannot be sustained under the "manifest need" test adopted for physical restraints in 
People v. Boose
, 66 Ill. 2d 261, 362 N.E.2d 303 (1977).  The State responds that (1) the belt is not a "restraining device," (2) the court did not abuse its discretion in ruling on defendant's request, or (3) any error was harmless.  I find no error.

The question presented in 
Boose
 was whether the trial court abused its discretion in denying a request to remove shackles based solely on the violent nature of the charges for which the defendant was being prosecuted.  In its analysis, our supreme court initially observed that shackling should generally be avoided because the practice (1) prejudiced the jury, (2) restricts the defendant's ability to assist counsel during trial, and (3) offends the dignity of the judicial process.  
Boose
, 66 Ill. 2d 261, 362 N.E.2d 303.  The court noted, however, that a defendant may be shackled if there is a "manifest need" for the shackling, such as reason to believe the defendant might escape, a threat to the safety of the occupants of the courtroom or the need to maintain order in the courtroom.  

The 
Martinez
 court, in a case of first impression in this state, concluded that concealed security belts were no different than shackles and therefore subject to the "manifest need" analysis set forth in 
Boose
.  
People v. Martinez
, 347 Ill. App. 3d 1001 (2004).  While I agree that the trial judge 
must not totally abdicate issu
es of courtroom security to the sheriff, I believe that the 
Martinez
 decision ignores the obvious difference between visible shackles and a concealed security belt.  For example, how can a concealed security belt prejudice a jury?  

In this case, there is nothing in the record to indicate that even defendant's attorney was 
aware defendant was wearing a security belt until the third day of trial when defendant brought it up before he testified.  The security belt would not restrict his movement and would not impart any prejudice to the jury or trier of fact.  Furthermore, I find the argument that the security belt made the defendant nervous to be without merit.  Had the defendant stated that he was afraid if he moved improperly a deputy would shoot him, would the judge be required to disarm the court deputy?  The stringent 
Boose
 rationale makes sense when applied to visible shackles; it simply fails when applied to concealed security belts.  

The electronic security belt provides a nonlethal method to subdue a person, reducing the likelihood that police officers would be required to use deadly force in a courtroom.  The reduced possibility of the use of deadly force not only benefits the defendant, but everyone else in the courtroom who would stand the risk of being struck by an errant bullet.  

One member of the
 
Martinez
 
majority characterizes security belts as "draconian restraints" that should be banned in Illinois, citing the allegation that the use of the belt can lead to "immediate and uncontrollable defecation and urination."  Martinez, 347 Ill. App. 3d at 1006 (McDade, J., specially concurring).  Assuming the truth of that allegation, for the sake of argument, again, the security belt is a nonlethal way to restrain someone, reducing the likelihood of police having to use firearms in a courtroom, which is a good thing, not a bad thing.  Let me assure the court that when bullets start flying, feces and urine are rarely far behind; gunshot victims routinely lose control of their bowels and bladders. 

The suggestion that security belts be banned in Illinois comes at a time when courtrooms are becoming more and more crowded and funds available for courthouse security are either inadequate or, in some cases, nonexistent.  Anyone considering outlawing concealed security belts should 
consider not only trials, but also arraignments.  
It is not unusual to have 20 or more criminal defendants brought into a courtroom for arraignment.  One or more of those defendants may have multiple friends in the courtroom.  This scenario creates the potential for a very violent and dangerous situation, should someone decide to use the courthouse as the place to escape custody.  A security belt could also deter or prevent the wearer from trying to disarm a courtroom deputy.  The security belt on the defendant goes a long way toward eliminating the risk that anyone would try to help him escape the sheriff's custody while in court.  This reduces the chance of violence to everyone in the courthouse, including the defendant.  
It also decreases the likelihood that deadly force would have to be exerted.  

The trial judge in this case, who sits, not in the ivory tower of a court of review, but in a busy and often overcrowded courtroom in one of the busiest courthouses in the state, noted that the presence of the security belt
 served as a reasonable deterrent to any kind of acting out and yet, unlike handcuffs or shackles, did not give the appearance that the defendant was in custody.  In this case, unlike the 
Martinez
 case, it is clear that the trial judge exercised his discretion with respect to the security belt, albeit not through a 
Boose
 analysis, and determined that the security belt should not be removed.  

Here, the trial judge had previously granted defendant's motion that he not be required to wear handcuffs at trial.  The trial judge was aware of and noted the defendant's history of convictions for violent crimes, including robbery and aggravated robbery, as well as the violent nature of the crimes for which defendant was currently standing trial.  

I would hold that the trial judge has the discretion to allow the use of concealed electronic security belts on criminal defendants during trial.  I find no abuse of that discretion here.  There is not a hint that the use of the electronic security belt here in any way deprived defendant of his right to a fair trial.  

I further agree with the State's position that, even assuming that the court's decision denying removal of the belt was error, it was harmless.  See 
Martinez
, 347 Ill. App. 3d at 1006 (Slater, J., dissenting).  See also 
People v. DuPree
, 353 Ill. App. 3d 1037 (2004); 
People v. Crutchfield
, 353 Ill. App. 3d 1014 (2004). Notwithstanding defendant's denial of any wrongdoing, the State's evidence overwhelmingly established defendant's guilt in the attack on Patel and the attempted robbery of the restaurant.  I note that at the outset of the trial, the court granted defendant's motion 
in limine
 excluding any evidence of defendant's prior convictions for robbery and aggravated robbery.  Defendant testified on his own behalf and admitted that he grabbed Ms. Patel and even put his hands over her mouth to keep her from screaming, but denied that he intended to injure her or to rob the restaurant.  After this testimony, the prosecutor did not ask the court to revisit its decision on defendant's motion 
in limine
.  I have no doubt that had the prosecution done so, the court would have reversed its ruling and allowed the prior convictions as evidence of intent.  
People v. Thingvold
, 145 Ill. 2d 441, 584 N.E.2d 89 (1991); 
People v. Abraham
, 324 Ill. App. 3d 26, 753 N.E.2d 1219 (2001).  

Defendant's right to a fair trial was scrupulously preserved in this case. Based on the evidence that was before them, no fair-minded jury would have voted to acquit.  
People v. Carlson
, 92 Ill. 2d 440, 442 N.E.2d 504 (1982).

In light of the differing views of appellate judges throughout the state on this important issue, our supreme court will no doubt one day resolve the issue.  In the meantime, even though I would prefer to affirm based on the reasoning of the dissent in 
Martinez
, 347 Ill. App. 3d at 1006 (Slater, J., dissenting)), and the two recent opinions out of the Fifth District, 
People v. DuPree
, 353 Ill. App. 3d 1037 (2004) and 
People v. Crutchfield
, 353 Ill. App. 3d 1014 (2004), 
I recognize that this panel needs to make a ruling on the case before us.  Sitting here, impaled on the horns of a dilemma, I find the position of Justice Holdridge preferable to that of Justice Lytton.  I therefore concur.  

JUSTICE LYTTON partially concurring and partially dissenting:

_________________________________________________________________

I agree with Justice Holdridge's determination that the trial court's failure to properly consider the 
Boose
 factors deprived defendant of a fair trial.  I write separately because I disagree with the narrow scope of the remand; I would remand for a new trial, not simply a retrospective hearing on the issue of the stun belt.

By insisting on a limited remand, Justice Holdridge's opinion contradicts supreme court precedent in a presumed effort to overturn it.
(footnote: 1) 

Justice Holdridge's resolution is not consistent with our supreme court's holding in 
People v. Boose
, 66 Ill. 2d 261 (1977).  In 
Boose
, the supreme court found that the trial court did not consider sufficient factors to justify shackling the defendant, it then reversed and remanded the case for a new fitness hearing, nothing less. 
Boose
, 66 Ill. 2d at 269; see also 
In re Staley
, 67 Ill. 2d 33, 38 (1977) (remand for new trial). From the time 
Boose
 was decided until now our appellate court has always followed the supreme court's mandate. See 
People v. Allen
, 354 Ill. App. 3d 442, 446 (2004), 
pet.
 
for
 
leave
 
to
 
appeal
 
granted
 No. 99977 (remand for new trial); 
People v. Doss
, 347 Ill. App. 3d 418, 427 (2004) (same); 
People v. Martinez
, 347 Ill. App. 3d 1001, 1005 (2004) (same
); 
People v. Bennett
, 281 Ill. App. 3d 814, 825-26 (1996) (same).  
Justice Holdridge offers no rationale for treating this case differently from 
Boose
 and 
Staley
.

The Florida and New York cases cited by Justice Holdridge are contrary to Illinois law and cannot be relied on as authority to support his position. See 
Allstate Insurance Co. v. Lane
, 345 Ill. App. 3d 547, 552 (2003).  Even if we were to consider the practice of other jurisdictions, these cases offer us no guidance.  Justice Holdridge cites three cases.  The first, from Florida, is 
Childers v. State
. (782 So. 2d 513 (Fla. Dist. Ct. App. 2001)). The shackling issue in 
Childers
 was a claim that defense counsel was ineffective for failing to object to the use of a stun belt. 
Childers
, 782 So. 2d at 518.  The case was remanded for a hearing on the ineffective assistance claim, not on the propriety of the stun belt. 
Childers
, 782 So. 2d at 518.  Florida cases decided after 
Childers
 have affirmed the necessity of a full remand when the trial court has failed to make proper 
Boose
-type findings. See 
Green v. State
, 850 So. 2d 597, 598 (Fla. Dist. Ct. App. 2003); 
Shelton v. State
, 831 So. 2d 806, 807 (Fla. Dist. Ct. App. 2002)

Justice Holdridge also cites two New York cases decided in 1971 and 1974.
(footnote: 2)  Both have long been superceded by more recent decisions in that state, where cases are now routinely remanded for a new trial. See 
People v. Vigliotti
, 611 N.Y.S.2d 413, 413 (N.Y. App. Div. 1994); 
People v. Thomas
, 510 N.Y.S.2d 460, 462 (N.Y. App. Div. 1986).  

Eighteen other states that have visited this issue also require a new trial after remand. See 
Townsend v. State
, 308 Ark. 266, 272 (Ark. 1992); 
People v. Mar
, 52 P. 3d 95, 114 (Cal. 2002); 
Weldon v. State
, 543 SE2d 56, 60 (Ga. Ct. App. 2000); 
Pace v. State
, 442 SE2d 307, 308 (Ga. Ct. App. 1994); 
McKenzey v. State
, 225 SE2d 512, 514-15 (Ga. Ct. App. 1976); 
State v. Castro
, 756 P.2d 1033, 1046-47 (Haw. 1988); 
State v. Brewer
, 301 So. 2d 630, 636 (La. 1974);  
Lovell v. State
, 702 A.2d 261, 273, 282 (Md. 1997); 
Commonwealth v. De Vasto
, 387 NE2d 1169, 1172 (Mass. App. Ct. 1979); 
People v. Baskin
, 378 NW2d 535, 540, 544 (Mich. Ct. App. 1985); 
State v. Borman
, 529 SW2d 192, 196 (Mo. Ct. App. 1975); 
Dickson v. State
, 822 P.2d 1122, 1124 (Nev. 1992); 
State v. Roberts
, 206 A.2d 200, 205-06 (N.J. Super. Ct. App. Div. 1965); 
Davis v. State
, 709 P.2d 207, 209 (Okla. Crim. App. 1985); 
State v. Glick
, 697 P.2d 1002, 1004 (Or. Ct. App. 1985); 
Commonwealth v. Cruz
, 311 A.2d 691, 693 (Pa. Super. Ct. 1973); 
Willocks v. State
, 546 SW2d 819, 822 (Tenn. Ct. App. 1976); 
Mendoza v. State
, 1 SW3d 829, 831 (Tex. Ct. App. 1999); 
Walthall v. State
, 505 SW2d 898, 898 (Tex. Ct. App. 1974); 
Martin v. Commonwealth
, 399 SE2d 623, 630 (Va. Ct. App. 1990); 
Miller v. Commonwealth
, 373 SE2d 721, 723, 725 (Va. Ct. App. 1988); 
State v. Jaquez
, 20 P.3d 1035, 1041 (Wash. Ct. App. 2001).

Illinois law requires a remand for a new trial when the record does not support the trial court's decision to require a defendant to wear a stun belt. 
There is no justification requiring a change in the rule; this cause should be reversed and remanded for a new trial.

FOOTNOTES
1:
Decisions of our supreme court bind lower courts in this state, including the third district appellate court. 
Super Liquors Inc. v. Illinois Liquor Control Commission
, 113 Ill. App. 3d 229 (3d Dist. 1983); 
Garcia v. Hynes and Howes Real Estate, Inc.
, 29 Ill. App. 3d 479 (3d Dist. 1975).  This is true notwithstanding any supposed different approaches to the law elsewhere. See 
Hensley v. Hensley
, 62 Ill. App. 2d 252 (1965).

2:
People v. Reingold
, 353 N.Y.S.2d 978 (N.Y. App. Div. 1974); 
People v. Williams
, 321 N.Y.S.2d 463 (N.Y. App. Div. 1971).