Argued and submitted October 28, 1992, reversed and remanded for new trial
September 22, 1993

# STATE OF OREGON,
*Respondent,*

*v.*

# CURTIS RAY TAYLOR,
*Appellant.*

## (CF-91-96; CA A70731)

858 P2d 1358

Irene B. Taylor, Deputy Public Defender, Salem, argued the cause for appellant. With her on the brief was Sally L. Avera, Public Defender, Salem.

Jonathan H. Fussner, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Charles S. Crookham, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Richardson, Chief Judge, and Deits and Durham, Judges.

DURHAM, J.

**DURHAM, J.**

Defendant appeals his conviction for possession of a weapon by an inmate, ORS 166.275,[1] and attempted assault in the second degree, ORS 163.175.[2] He assigns error to the court's refusal to give jury instructions on the defenses of self-defense and choice of evils. He also assigns error to the court's order that he be shackled during trial. We reverse.

■ ORS 161.209 describes the circumstances in which a person may use physical force for self-defense:

"Except as provided in ORS 161.215 and 161.219, a person is justified in using physical force upon another person for self-defense or to defend a third person from what the person reasonably believes to be the use or imminent use of unlawful physical force, and the person may use a degree of force which the person reasonably believes to be necessary for the purpose."

ORS 161.200 states the elements of the choice of evils defense:

"(1) [C]onduct which would otherwise constitute an offense is justifiable and not criminal when:

---

[1] ORS 166.275 provides:

"Any person committed to any institution who, while under the jurisdiction of any institution or while being conveyed to or from any institution, possesses or carries upon the person, or has under the custody or control of the person any dangerous instrument, or any weapon including but not limited to any blackjack, slingshot, billy, sand club, metal knuckles, explosive substance * * * without lawful authority, is guilty of a felony and upon conviction thereof shall be punished by imprisonment in the custody of the Department of Corrections for a term not more than 20 years."

[2] ORS 163.175 provides:

"(1) A person commits the crime of assault in the second degree if the person:

"(a) Intentionally or knowingly causes serious physical injury to another; or

"(b) Intentionally or knowingly causes physical injury to another by means of a deadly or dangerous weapon; or

"(c) Recklessly causes serious physical injury to another by means of a deadly or dangerous weapon under circumstances manifesting extreme indifference to the value of human life."

ORS 161.405(1) provides:

"A person is guilty of an attempt to commit a crime when the person intentionally engages in conduct which constitutes a substantial step toward commission of the crime."

"(a)  That conduct is necessary as an emergency measure to avoid an imminent public or private injury; and

"(b)  The threatened injury is of such gravity that, according to ordinary standards of intelligence and morality, the desirability and urgency of avoiding the injury clearly outweigh the desirability of avoiding the injury sought to be prevented by the statute defining the offense in issue.

"(2)  The necessity and justifiability of conduct under subsection (1) of this section shall not rest upon considerations pertaining only to the morality and advisability of the statute, either in its general application or with respect to its application to a particular class of cases arising thereunder."

■     *State v. Shelley*, 110 Or App 225, 228, 821 P2d 1111 (1991) says:

"When a defendant asserts a defense to a charge, he is entitled to have his theory of the case presented to the jury, if there is any evidence from which the jurors could infer that the required elements of the defense are present. The trial court has no discretion to refuse to give a proper instruction."

Defendant contends that he was entitled to the requested instructions because any attempt to use force on the victim, Bay, was in response to what defendant reasonably believed was an imminent use of unlawful physical force. The state contends that there was no evidence of an imminent use of unlawful physical force by Bay. In considering the competing arguments, we evaluate the evidence in the light most favorable to the party seeking the instructions. *State v. Brown*, 306 Or 599, 607, 761 P2d 1300 (1988).

Defendant and Bay were inmates at Eastern Oregon Correctional Institution. They were assigned to the same dormitory. Defendant was required to walk past Bay's bunk to go anywhere in the unit, including the bathroom. They had been involved in fights in the past. On January 19, 1990, between 9 and 11 p.m., they engaged in three fights. On that night, Bay twice threatened to stab defendant with a pencil while defendant was sleeping. Defendant testified that he believed Bay might be dangerous:

"[Defense Counsel]:  Okay. Did you think that he might be dangerous?

"[Defendant]:  Well, when he came on to the unit, you know, if they were discussing what people you know when

you enter prison they discuss what you're in there for you know.

"* * * * *

"[Defendant]: Well, I heard him say personally that he came from — that he was doing time in Texas. That he's he had a manslaughter — he was doing time for manslaughter up there. And he said that he had one of the cases up there where he got stabbed and that he stabbed some people you know. And um, when this incident happened you know he threatened me you know and — "

Defendant asked the unit supervisor to be moved. The unit supervisor refused and told defendant that he must put the request in writing.

At around 11 p.m., defendant wanted to go to the bathroom but was afraid to walk past Bay's bunk. Defendant testified:

"[Defense Counsel]: Okay. And then what happened after the 11:00 count?

"[Defendant]: Well, after the 11:00 count, well, he was sitting there at his bunk you know and I was sitting at my bunk you know. After he threatened me you know I'm not going to go to sleep you know after he was saying that he was in prison in Texas for manslaughter you know and him threaten me and having a pencil you know. I'm sitting there and I'm afraid to go to sleep.

"[Defense Counsel]: So, what did you do?

"[Defendant]: Well, I wanted to go to the bathroom you know. But he had the pencil in his hand and you know he's threatened me you know earlier that night. And I'm not going to walk by there and have him have something. I walked by his bunk you know. He threatened me saying like you better not go to sleep you know I'm going to stab you."

Defendant put a lock into a sock and put the device in his pocket before going to the bathroom. Bay testified that he quickly jumped off his bed when he noticed defendant near him. He had a pencil in his hand. They exchanged words and defendant swung the device at Bay. Bay sustained a head injury, which he testified he received by either hitting his head on his foot locker while jumping out of bed or by fighting.

On this record, there was evidence to support the requested instructions. Defendant knew that Bay had been imprisoned for manslaughter, had stabbed people and had threatened to stab defendant with a pencil twice on the night in question. Bay made one of those threats shortly before the event that led to these charges. Bay had fought with defendant three times that night and on other occasions. Defendant armed himself with the lock because of those threats and Bay's history of violence. When defendant approached, Bay jumped quickly from his bed and had the pencil in his hand. Defendant swung the device in response to Bay's action.

■ An imminent threat is one that is immediate, ready to take place, or near at hand. *State v. Jackson*, 33 Or App 139, 145, 575 P2d 1001, *rev den* 283 Or 99 (1978), *cert den* 440 US 971 (1979). The evidence, when viewed most favorably to defendant, is adequate to support a finding that he reasonably believed that Bay's use of unlawful force was imminent and that defendant acted to avoid imminent injury. *State v. Boldt*, 116 Or App 480, 841 P2d 1196 (1992); *State v. Lockwood*, 43 Or App 639, 645, 603 P2d 1231 (1979). The state does not contend that the requested instructions were deficient in any other way. The court's refusal to give the requested instructions was reversible error.

■ We need not reach defendant's assignment of error regarding the court's order requiring him to be shackled at trial, because the alleged error may not occur again on remand.[3]

Reversed and remanded for a new trial.

---

[3] To restrain a defendant during trial the judge must find, on the record, that the defendant posed an immediate or serious risk of committing dangerous or disruptive behavior, or that he posed a serious risk of escape. *State v. Glick*, 73 Or App 79, 83, 697 P2d 1002 (1985); *State v. Kessler*, 57 Or App 469, 474, 645 P2d 1070 (1982); *State v. Moore*, 45 Or App 837, 840, 609 P2d 866 (1980).