Argued and submitted December 6, 1999, affirmed October 11, 2000,
petition for review denied March 7, 2001 (331 Or 674)

# STATE OF OREGON,
*Respondent,*

*v.*

# JORDAN SCOTT MERRELL,
*Appellant.*

## (109706506; CA A101730)

12 P3d 556

Emily Simon argued the cause for appellant. With her on the briefs was David T. McDonald.

Ann Kelley, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Wollheim, Presiding Judge, and Linder and Brewer, Judges.

BREWER, J.

## BREWER, J.

■ Defendant appeals from his convictions for two counts of felony murder, based on the underlying crimes of burglary in the first degree and robbery in the first degree. ORS 163.115(b); ORS 164.225; ORS 164.415. Although defendant makes three assignments of error, we write only to consider his contention that the trial court erred in ordering that he remain shackled during trial and in denying his motion for mistrial on that basis. We review those decisions for abuse of discretion, *State v. Kessler*, 57 Or App 469, 473, 645 P2d 1070 (1982), and affirm.

Defendant was tried as an adult[1] under ORS 137.707 for the murder of an 83-year-old man. The murder occurred during the robbery of the victim and the burglary of his residence by defendant and two accomplices. Defendant was convicted of both felony murder charges following a jury trial. Except during *voir dire*, defendant's legs were shackled by iron restraints that were connected by a two-foot chain approximately one inch in diameter. Defendant was not handcuffed, gagged or—except for the leg shackles—otherwise physically restrained. The trial court placed butcher paper in front of counsel table throughout the trial in order to prevent the jury from seeing the restraints. Defendant argues that the trial court's decision to restrain him violated Article I, section 11, of the Oregon Constitution, and the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

■ The state initially argues that defendant's state constitutional argument is not preserved. We disagree. Defendant objected to his restraint on several occasions during the proceedings, relying on Oregon decisions that recognized both federal and state constitutional protections. Defendant's objections adequately explained the rationale of his argument and informed the trial court that he relied in part on the Oregon Constitution. *See State v. Amini*, 154 Or App 589, 593, 963 P2d 65, *rev allowed* 327 Or 620 (1998) (holding that defendant preserved claim that statute was unconstitutional

---

[1] Defendant was 15 years old at the time of the murder.

by explaining his rationale, even though he did not identify a particular constitutional provision that was offended).

Although we generally decide state constitutional issues before reaching federal constitutional questions, *State v. Kennedy*, 295 Or 260, 262, 666 P2d 1316 (1983), Oregon courts have treated restraint issues similarly under Article I, section 11, of the Oregon Constitution, and under the Due Process Clause. *See Amini*, 154 Or App at 595. The Oregon Constitution does not have a "due process clause." *Id.* at 595 n 2. However, in *Amini*, we explained that an accused's "right to a public trial by an impartial jury" in Article I, section 11, guarantees the right to a fair and impartial trial. *Id.* at 594 (quoting *State ex rel Ricco v. Biggs*, 198 Or 413, 428, 255 P2d 1055 (1953)); *but see State v. Guzek*, 322 Or 245, 279, 906 P2d 272 (1996) (Graber, J., dissenting) (Article I, section 11's, "impartial jury" protection governs only the composition of the jury panel). We also explained that the protections found in Article I, section 11, and the federal Due Process Clause "embody a similar 'fairness' standard." *Amini*, 154 Or App at 594. *See also Guinn v. Cupp*, 304 Or 488, 493, 747 P2d 984 (1987) (Oregon "common-law" right to remain free from restraints is similar to due process right, citing *Estelle v. Williams*, 425 US 501, 505, 96 S Ct 1691, 48 L Ed 2d 126 (1976); *Illinois v. Allen*, 397 US 337, 344, 90 S Ct 1057, 25 L Ed 2d 353 (1970)). Accordingly, in addressing that state constitutional protection, we consider authority that applies to the largely similar analysis under the Due Process Clause. *Amini*, 154 Or App at 594.

Oregon has long recognized the right of defendants to be free from physical restraints during criminal trials. *See State v. Smith*, 11 Or 205, 207-08, 8 P 343 (1883); *State ex rel Juv. Dept. v. Millican*, 138 Or App 142, 145, 906 P2d 857 (1995), *rev den* 323 Or 114 (1996). The use of restraints "impinge[s] on the presumption of innocence and the dignity of the judicial proceedings and may inhibit [a defendant's] consultation with his attorney and his decision whether to take the stand as a witness." *Kessler*, 57 Or App at 474. With that overriding set of concerns in mind, we held in *State v. Taylor*, 123 Or App 343, 858 P2d 1358 (1993), that "[t]o restrain a defendant during trial the judge must find, on the record, that the defendant posed an immediate or serious

risk of committing dangerous or disruptive behavior, or that he posed a serious risk of escape." *Id.* at 348 n 3. We also have stated that restraint of a defendant during trial without substantial justification results in manifest prejudice. *State v. Glick*, 73 Or App 79, 82, 697 P2d 1002 (1985); *State v. Schroeder*, 62 Or App 331, 337-38, 661 P2d 111, *rev den* 295 Or 161 (1983).

■ ■ In exercising its discretion to impose physical restraints, "the court must receive and evaluate relevant information and must make a record allowing appellate review of its decision." *Millican*, 138 Or App at 146. The information need not be presented in a formal adversarial proceeding, but it must provide a basis for the trial court to make an independent assessment of the risk. *Kessler*, 57 Or App at 473. Although a sheriff's deputy or a prosecutor may provide helpful and necessary information in order to assist in the assessment of the risk posed by an unrestrained defendant, the trial court may not simply accept the conclusions of others; it must make an independent determination that restraint is justified. *See State v. Bird*, 59 Or App 74, 77, 650 P2d 949, *rev den* 294 Or 78 (1982).

■ Defendant objected to his restraint during pretrial proceedings, at the start of the jury trial, and after the state rested. On each occasion he argued, as he does on appeal, that the information in the record was insufficient to establish that he posed an immediate or serious risk of committing dangerous or disruptive behavior or that he posed a serious risk of escape.[2]

During a pretrial hearing, the sheriff asked the court to order defendant restrained for several reasons. The deputy cited defendant's "youth and athletic ability," the fact that

---

[2] Defendant challenges the trial court's decision to restrain him only on the ground that the record was insufficient to establish that he posed an immediate and serious risk of committing dangerous or disruptive behavior, or that he posed a serious risk of escape. He does not argue that his restraint was impermissible because the trial court failed to pursue less restrictive alternatives to shackling. *Compare Duckett v. Godinez*, 67 F3d 734, 747-49 (9th Cir 1995), *cert den* 517 US 1158 (1996) (court must pursue less restrictive alternatives before imposing physical restraints) *with, e.g., State v. Farrar*, 309 Or 132, 158, 786 P2d 161, *cert den* 498 US 879 (1990) (applying immediate and serious risk of danger or disruption or escape test without reference to less restrictive alternatives). We have no occasion in this case to consider whether such a determination is constitutionally required.

only one deputy was going to be present in the courtroom, defendant's "maximum custody" status and the deputy's concern that he would have to pursue defendant should he attempt to escape.

The state presented additional information from which the court was independently able to determine that defendant posed an immediate and serious security risk. During a pretrial hearing, the prosecutor offered a letter that described defendant's juvenile record and prior history of disruptive and threatening behavior in juvenile correction and detention settings. In particular, the letter recited that defendant was defiant and disruptive in Oregon Youth Authority custody, was removed from a foster home in 1995 due to safety concerns, was found in possession of a firearm in 1996 in violation of the terms of his probation, and was terminated from a treatment center in 1997 after becoming angry, swinging a stick around, and destroying other people's property. The letter also described defendant's escape plan while incarcerated in a juvenile detention facility during the pendency of this case:

> "[Defendant] approached another youth in the facility and discussed a potential escape plan that involved calling a staff member into the bathroom, asking for additional toilet paper, and striking the staff member while he was off guard and taking the keys. [Defendant] also [allegedly] stated that 'All I need is one shot at that fence and I'll be out of here.' "

In addition, the letter stated that defendant had absconded from juvenile probation supervision in Lincoln County.

In response to the information provided, the court directed that defendant remain shackled during the pretrial proceedings. At the beginning of trial, the prosecutor requested that defendant

> "remain shackled based upon his prior escape plans out of [juvenile detention], the fact that there will be only one deputy who will be in attendance here, as well as the nature of the charges, and his youth, if he were to attempt to escape and [the deputy] not be able to capture him."

In considering that request, the court again discussed the potential for additional deputies in lieu of the use of

restraints. The court pointed out that "[t]he Sheriff's Office * * * is understaffed, to put it charitably." The court also confirmed that, because of the layout of the courtroom and the location of defendant's seat at counsel table, there had to be two deputies in the courtroom if defendant were not to be restrained. As a consequence, the court ordered that defendant remain shackled during trial. Later, in response to defendant's motion for mistrial at the end of the state's case, the court reiterated its conclusion that "[t]his is a pretty easy courtroom to get out of. We've had people leave these courtrooms quickly before, and it's just not worth the risk that that presents."

Taking into account defendant's history of assaultive conduct in juvenile correction and detention settings, his history of flight, and his previous plan to escape by force from the juvenile detention facility in which he had been detained while awaiting trial in this case, we conclude that the trial court did not err in determining that defendant posed an immediate and serious risk of dangerous or disruptive behavior and a serious risk of escape from the courtroom. Therefore, the trial court did not abuse its discretion in restraining defendant as it did. It follows that the court also did not err in denying defendant's motion for mistrial.

Affirmed.