Argued and submitted September 30, affirmed December 11, 2002

# STATE OF OREGON,
## *Respondent,*

*v.*

# GARY DYLAN CAVAN,
## *Appellant.*

## 99100124C; A111776

59 P3d 553

Peter Gartlan, Chief Deputy Public Defender, argued the cause for appellant. With him on the brief was David E. Groom, Acting Executive Director, Office of Public Defense Services.

Jennifer S. Lloyd, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Edmonds, Presiding Judge, Deits, Chief Judge,* and Kistler, Judge.

KISTLER, J.

---

* Deits, C. J., *vice* Warren, S. J.

**KISTLER, J.**

Defendant appeals from a judgment of conviction arising out of an assault on a corrections officer at Snake River Correctional Institution (SRCI). He argues that holding his trial in a courtroom constructed inside SRCI violated his state and federal constitutional rights. We affirm.

While defendant was an inmate at SRCI, he attacked a corrections officer and repeatedly hit him with a homemade sap. At one point during their struggle, defendant bit off a piece of the correction officer's cheek and tried to spit it into the officer's mouth. Other officers arrived and helped subdue defendant. As he was being led away, defendant raised his arm in a "victory salute." The state charged defendant with first-degree assault, second-degree assault, fourth-degree assault, assaulting a public safety officer, and being an inmate in possession of a weapon.

Based on defendant's extensive disciplinary record in the prison system, his involvement in an earlier violent escape attempt at another facility, and the unprovoked nature of this attack, the state proposed holding defendant's trial in a courtroom constructed in the visiting area at SRCI. The state reasoned that defendant would pose a serious safety risk if he were transported to Vale for trial. The state also noted that the assault occurred at SRCI and that "[a]ll but one of the witnesses will be either inmates, corrections officers or [SRCI] staff." Finding that defendant posed "a clear and present danger" and citing an "overriding public interest," the trial court overruled defendant's objections and decided that it was appropriate to hold the trial at SRCI. After considering the state's evidence, which defendant did not dispute in any substantial way, the jury found defendant guilty on all counts.

On appeal, defendant argues that holding his trial at SRCI violated his right to a public trial, an impartial jury, and due process.[1] We begin with defendant's public trial

---

[1] Defendant also argues that holding the trial at SRCI violated the open courts clause of Article I, section 10, of the Oregon Constitution. Defendant, however, did not raise that issue below.

claim. Article I, section 11, of the Oregon Constitution guarantees persons charged with crimes the right to a public trial. *See State v. Jackson*, 178 Or App 233, 239-40, 36 P3d 500 (2001).[2] The right is personal to the defendant and is intended to ensure public scrutiny of the criminal process. *Id.* at 236, 242-44. Although defendant contends that holding the trial at SRCI impermissibly restricted the public's access to his trial, the record does not support that contention.[3]

The record shows that the state has constructed a courtroom in the visiting area at SRCI. The courtroom provides space for the judge, both parties to the dispute, and the jury. Although the general public cannot sit in the courtroom because of its size, members of the public can sit outside the courtroom and view the proceedings through several large windows opening onto the courtroom.[4] The viewing area contains approximately 50 seats for the public. It permits the members of the public who attend to see all of the proceedings. The judge, the witness stand, the jury, and both counsel tables are all visible from the public viewing area. The audio portion of the trial is broadcast to the public by speakers.[5] In short, the public had full audio and visual access to the courtroom during defendant's trial, and the jury could see the members of the public. In the ordinary understanding of the term, defendant's trial was public.

---

[2] On appeal, defendant argues that holding the trial at SRCI violated his statutory right to a public trial as well as his state and federal constitutional rights. Defendant, however, did not raise a statutory claim below, nor has he argued that the statutes provide a greater right to a public trial than the state constitution. Accordingly, we begin with defendant's state constitutional claim.

[3] In determining whether defendant's trial was a public trial within the meaning of the state and federal constitutions, the trial court's explicit and implicit findings of historical fact are binding on appeal to the extent that they are supported by evidence in the record. *Ball v. Gladden*, 250 Or 485, 443 P2d 621 (1968); *State v. Greenwood*, 175 Or App 69, 71-72, 27 P3d 151 (2001) (applying *Ball v. Gladden* standard in Article I, section 11, analysis). The question whether those facts satisfy the constitutional right to a public trial presents an issue of law for the court. *See Jackson*, 178 Or App at 244.

[4] One judge stated that, "[The courtroom wall facing the public] is essentially all glass."

[5] In this case, the staff at SRCI did not perform background checks on members of the public wishing to view the trial, although persons wishing to view the trial had to go through the usual security procedures before entering the visiting area.

Our opinion in *Jackson* does not suggest a different conclusion. Rather, it confirms our decision here. In *Jackson,* we held that a trial conducted at SRCI was not a public trial within the meaning of Article I, section 11. In that case, however, the public did not have access to the trial itself. *Jackson,* 178 Or App at 235-36. The public was able to view the proceedings only by means of a live television transmission that was broadcast to a room in the courthouse in Vale. *Id.* That transmission did not permit the public to see everything that happened in the courtroom. *Id.* In considering whether that transmission satisfied the defendant's right to a public trial, we identified four interests that the constitutional guarantee serves[6] and concluded that, on balance, the transmission did not provide the defendant with a public trial. *Id.* at 242-45. In this case, the new viewing facilities at SRCI gave the public complete access to defendant's trial and satisfied the interests that we identified in *Jackson.* Holding defendant's trial at SRCI did not violate his right to a public trial under Article I, section 11.[7]

We turn next to defendant's claim that the trial court deprived him of an impartial jury in violation of Article I, section 11, of the Oregon Constitution.[8] In support of that claim, defendant argues that the prejudice created by holding a trial at SRCI is comparable to that created by trying a defendant in shackles. In both instances, defendant argues, the jury is left with the impression that the defendant is a dangerous person. It follows, defendant reasons, that holding jury trials within SRCI constitutes a *per se* violation of his right to an

---

[6] We explained (1) that the exclusion of the public tends to impress the jury with the enormity of the offense for which the accused is being tried, (2) that the testimony may cause spectators to recall facts that may prove (or disprove) the innocence of the defendant, (3) that the presence of friends and supporters may serve to offset any prejudice associated with being accused of a crime, and (4) that the presence of friends and supporters may assist the defense and prosecution in getting the testimony to which they are entitled. *Jackson,* 178 Or App at 240-41. We explained that these four interests were merely "relevant considerations" and were not intended to serve as any sort of rigid test. *Id.* at 242 n 2.

[7] Our holding that defendant's trial was a public trial within the meaning of Article I, section 11, applies equally to the Sixth Amendment. *See Jackson,* 178 Or App at 240 (recognizing that the public trial guarantee in Article I, section 11, is "to the same effect" as the Sixth Amendment guarantee).

[8] On appeal, defendant does not argue that holding the trial at SRCI violated his Sixth Amendment right to an impartial jury.

impartial jury. He argues alternatively that, even if holding jury trials in SRCI is not a *per se* violation of the right, the facts in this case do not justify holding his trial at SRCI. The state responds that defendant does not state a cognizable Article I, section 11, claim.

We agree with the state that defendant's reliance on Article I, section 11, as the source of a generalized right to a fair trial is misplaced. That provision guarantees the right to an impartial jury. It does not guarantee the right to a fair trial. The two concepts are not synonymous, as the court explained in *State v. Amini*, 331 Or 384, 15 P3d 541 (2000). The court recognized in *Amini* that the Article I, section 11, right to an impartial jury ensures a defendant of two things: (1) that no person who is biased or interested in the proceedings will serve on the jury and (2) that the defendant has a right to a change of venue if the pretrial publicity prevents an impartial jury from being drawn from the county where the crime is committed. *Id.* at 391. The court, however, expressly declined to "expand the guarantee of a trial by an impartial jury into an unqualified guarantee of a fair trial." *Id.* at 392. In short, the court declined to convert Article I, section 11, into a state due process clause. *See id.* at 393-94.

■    The two guarantees protect different interests. Article I, section 11, ensures that the jurors are not biased in favor or against either party when they are selected and that they do not engage in any conduct during the course of the trial, such as considering evidence outside the record or engaging in improper contacts, that could prevent them from making a decision based on the evidence produced at trial and the court's instructions. *See Amini*, 331 Or at 391. The Due Process Clause, on the other hand, focuses on the fairness of trial procedures. Decisions that a court makes concerning the way that the trial will be conducted, such as the clothing worn by a defendant, the number of uniformed officers in the courtroom, and the admission of or refusal to admit evidence, may affect the defendant's ability to present his or her case fairly to the jury. Those decisions do not, at their core, implicate juror bias; rather, they go to a defendant's ability to convey the merits of his or her case to the jury in a forum that does not unnecessarily add legitimacy to the state's assertion that the defendant is guilty or unfairly

minimize the impact of the defendant's evidence and arguments.[9]

In this case, defendant does not argue that some factor extrinsic to the trial process affected the jury's impartiality. Rather, he challenges the trial court's decision regarding one aspect of the trial process itself. He argues that the court's decision to hold the trial at SRCI rather than Vale impaired his ability to receive a fair trial. If defendant has a constitutional challenge to that decision, it is a claim that that decision denied him due process. Defendant does not have a cognizable Article I, section 11, challenge.

■ We turn finally to defendant's due process claim.[10] Under the Due Process Clause, the initial question is whether the challenged practice is "inherently prejudicial"— *i.e.*, whether it poses a serious threat to the fairness of the factfinding process. *Holbrook v. Flynn*, 475 US 560, 568, 106 S Ct 1340, 89 L Ed 2d 525 (1986) (citing *Estelle v. Williams*, 425 US 501, 503-04, 96 S Ct 1691, 48 L Ed 2d 126 (1976)).[11] The Court explained that inherently prejudicial practices— practices such as requiring a criminal defendant to appear before the jury in prison clothes and binding and gagging the defendant during trial—create in the minds of jurors the

---

[9] The shackling cases on which defendant relies are due process cases; not impartial jury cases. *See State v. Kessler*, 57 Or App 469, 475, 645 P2d 1070 (1982) ("By showing that he was required to wear leg shackles, without a showing of substantial necessity, defendant has demonstrated a violation of his due process right to a fair trial."); *State v. Moore*, 45 Or App 837, 839, 609 P2d 866 (1980) ("Shackling a criminal defendant is potentially prejudicial by impinging on the defendant's Fifth Amendment and Due Process rights against self-incrimination by mute testimony of a violent disposition.").

[10] The state argues that defendant did not raise a due process claim in his opening brief. Defendant's brief states that the first question presented is: "Does a jury trial in a prison setting violate a defendant's Article I, section 11, right to an impartial jury or his Fourteenth Amendment Due Process right to a fair trial?" Defendant also sets out, albeit briefly, the federal due process standard and identifies it as such in the course of making an Article I, section 11, argument. As we understand defendant's argument, it assumes that the analysis under the Due Process Clause is no different from the analysis under Article I, section 11. Defendant accordingly blends the two arguments. Although defendant's federal due process argument is somewhat indistinct, we conclude that his opening brief sufficiently raised the issue. Similarly, we conclude that he sufficiently preserved the issue at trial.

[11] In *Holbrook*, the Court phrased this question in different ways. It later asked whether the practice created " 'an unacceptable risk of impermissible factors coming into play.' " 475 US at 570 (quoting *Estelle*, 425 US at 505).

impression that a defendant is dangerous and needs to be kept separate from the community at large. *Id.* at 568-69. If a practice is found to be inherently prejudicial, it must be subjected to "close judicial scrutiny." *Id.* As the Court later restated the test, inherently prejudicial practices "should be permitted only where justified by an essential state interest specific to each trial." *Id.* If a challenged practice is not inherently prejudicial, then the state need not justify it and a defendant must prove actual prejudice in order to establish a constitutional violation. *Id.* at 572.

Under *Holbrook*, defendant's due process argument raises two questions. The first is whether the practice of holding a trial in SRCI is an inherently prejudicial practice. If it is, the second question is whether holding the trial in SRCI was justified by an essential state interest specific to defendant's trial.

On the first question, although the Court has determined that shackling a prisoner in a courtroom is an inherently prejudicial practice, it has held that having four uniformed police officers in the courtroom is not. *Holbrook*, 475 US at 568-71. In making that distinction, the Court explained that, unlike shackling, there is a "wider range of inferences that a juror might reasonably draw from the officers' presence." *Id.* at 569. As the Court reasoned, "[w]hile shackling and prison clothes are unmistakable indications of the need to separate a defendant from the community at large, the presence of guards at a defendant's trial need not be interpreted as a sign that he [or she] is particularly dangerous[.]"[12] *Id.* The Court's conclusion that the presence of four uniformed officers at the defendant's trial was not inherently prejudicial turned on the risk that the practice, if permitted, would single out the defendant as a dangerous person, discounted by the likelihood that the jury would not draw that inference.

Given *Holbrook*'s reasoning, we hold that trying an inmate within a prison is an inherently prejudicial practice.

---

[12] More specifically, the Court explained that the presence of four uniformed officers at the petitioner's trial was not inherently prejudicial because their presence was "unlikely to [be] taken as a sign of anything other than a normal official concern for the safety and order of the proceedings." *Holbrook*, 475 US at 571.

Holding a trial within the walls of a facility designed to segregate violent or dangerous persons from the public at large implies that there is some need for security measures above and beyond those of a normal trial. To be sure, the charges in this case arose out of an incident at the prison, and the jurors could have inferred that the court elected to hold the trial at the prison for administrative rather than safety reasons. But the decision to hold a trial at a prison is such a departure from the ordinary course, and the risk of singling defendant out in some impermissible way is sufficiently great, that we hold that the practice is inherently prejudicial; that is, holding trials within prison, like shackling, should be permitted "only where justified by an essential state interest specific to each trial." *Holbrook*, 475 US at 568-69.

■ The remaining question is whether an essential state interest justified the decision in this case. In analyzing that question, we note at the outset that the risks of prejudice posed by the various practices grouped under the category of "inherently prejudicial" practices are not all of the same type. *See Illinois v. Allen*, 397 US 337, 344-46, 90 S Ct 1057, 25 L Ed 2d 353 (1970) (considering the differing kinds of prejudice that would result from the various means of controlling an obdurate and recalcitrant defendant).[13] Each case must be examined on its own terms. Even in the context of trials within prisons, it makes a difference whether the defendant is being tried for an act that he or she committed within or outside the prison. In this case, for example, holding the trial at SRCI did not tell the jurors anything about defendant's status as an inmate that they would not have learned from the evidence at trial.[14] The location and features of the courtroom within the prison also make a difference, and the possible inferences that the jury could draw from the decision to hold the trial within the prison must be identified and considered. *See Holbrook*, 475 US at 570-72.

---

[13] Although *Allen* was a Sixth Amendment case, the Court relied on its reasoning in analyzing the defendant's due process claim in *Holbrook*. *See* 475 US at 568.

[14] If an inmate were being tried for a crime that he or she had committed outside the prison, holding that trial inside the prison could tell the jury something that it would not have otherwise learned during the trial—that the defendant who was on trial for one crime had been convicted of and was being punished for another crime. The risk of prejudice to the defendant in the latter situation would be greater and would require a greater justification on the state's part.

In this case, as noted above, no matter where defendant's trial was held, the jury would have learned during the course of his trial that he had been an inmate at a correctional institution when the alleged assaults occurred. Holding the trial in the courtroom at SRCI did not tell the jury anything about defendant's status that it would not have learned at trial. To be sure, the jury could have inferred from the decision to hold the trial at SRCI that defendant was dangerous, but it also could have inferred that the decision was based on administrative rather than safety concerns. Much like the considerations underlying venue, the jury reasonably could have inferred that defendant's trial was being conducted at the courtroom in SRCI because that was the more convenient location. Finally, to the extent that holding a trial within a prison could result in an ominous or oppressive atmosphere that could affect the jury's verdict, as defendant argues, the trial in this case was held in what appears to have been an ordinary courtroom. The trial court described it as "light and airy," and, although the courtroom was located within the secured area at SRCI, it was in the visiting area on the periphery of the institution. It was in the portion of the institution that was most accessible to the public. In sum, although the decision to hold defendant's trial constitutes an inherently prejudicial practice within the meaning of *Holbrook*, the risk of prejudice is less in this case than it might otherwise have been.

Although the state must show that an essential state interest justifies an inherently prejudicial practice, the strength of the required showing will vary with the risk of prejudice that the particular practice poses. Here, the state relies on an essential interest—security—and the question is whether the security concerns that the state identified justify the decision to hold defendant's trial at SRCI. On that point, we note that, at the time of trial, defendant was 18. Two years earlier, he had been involved in a violent escape attempt from an Oregon Youth Authority facility. As a result of that incident, defendant pleaded guilty to one count of criminal conspiracy, one count of attempted first-degree escape, two counts of second-degree assault, and three counts of third-degree assault. After that incident, defendant was transferred to an adult corrections facility. During his time in

the adult facility, defendant has spent 22 of 24 months in segregation because of repeated disciplinary violations. Within that time, he has repeatedly refused to comply with corrections officers' orders. He has attacked another inmate. He has prepared to resist efforts to control his conduct. He has had to be forcibly extracted from his cell by a team of corrections officers. And, in this case, he was charged with possessing a weapon, repeatedly hitting a corrections officer with that weapon, and biting off a piece of the corrections officer's cheek.

Given those facts, the trial court determined that the state's essential interest in security justified holding the trial at SRCI rather than at Vale. We cannot say that the court erred in concluding that defendant posed a sufficient safety and security risk at trial to justify taking preventive measures, nor can we say that the court abused its discretion in deciding that it was better to hold the trial at SRCI than Vale. *See State v. Farrar*, 309 Or 132, 158, 786 P2d 161 (1990) (reviewing the trial court's decision to shackle the defendant during trial for an abuse of discretion); *State v. Merrell*, 170 Or App 400, 402, 12 P3d 556 (2000), *rev den*, 331 Or 674 (2001) (same). Indeed, had the trial been held at the county courthouse in Vale rather than SRCI, the trial court could have concluded on this record that shackling would have been appropriate. *Id.* Thus, the choice here was not between a trial in Vale, free of any suggestion that defendant posed a danger, and a trial at SRCI. Rather, the choice was between two different means of controlling defendant's conduct during trial, each of which posed similar but slightly different risks of prejudice. Given defendant's record, the choice of one means rather than the other did not deny defendant due process.

Affirmed.