

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

---

### NO. PD-0556-23

---

**BRIAN DALE NIXON, Appellant**

**v.**

**THE STATE OF TEXAS**

---

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE FOURTH COURT OF APPEALS
### MEDINA COUNTY

---

WALKER, J., filed a dissenting opinion.

### <u>DISSENTING OPINION</u>

This is the Medina County Jail. It boldly declares to all the world—in big letters on the front

of the building right above the door—that it is a "JAIL":



Defense Ex. 1 Hrg 2020-11-05

It is not a courthouse that happens to have jail facilities inside of it. Nor is it a structure in which a courtroom shares "the same building where the jail and the sheriff's department were located," such that they are all separate facilities.[1] The building does not call itself the "Medina County Government Center," or the "Medina County Criminal Justice Center." It is a jail.

Jurors are not indifferent to their surroundings. If they were, why do we bother with the rules of evidence and the rules of trial practice? Jurors, walking into a courthouse, are well aware that they are walking into a courthouse, the building where trials take place. Indeed, "[c]ourthouses are often monuments of public life, adorned with architectural flourishes and historical exhibits that make them inviting to members of the public." *State v. Jaime*, 233 P.3d 554, 557 (Wash. 2010).

And monuments they are:

the courtroom in Anglo-American jurisprudence is more than a location with seats for a judge, jury, witnesses, defendant, prosecutor, defense counsel and public observers; the setting that the courtroom provides is itself an important element in the constitutional conception of trial, contributing a dignity essential to "the integrity of the trial" process.

*Estes v. Texas*, 381 U.S. 532, 561 (1965) (Warren, C.J., concurring) (quoting *Craig v. Harney*, 331 U.S. 367, 377 (1947)).

As our peers at the Supreme Court of Oregon explained:

Courts ordinarily hold criminal trials in courtrooms located within a public courthouse; that location is familiar to, or readily ascertainable by the public, and is a place where the public conducts a variety of governmental business. The public courthouse, and, by extension, the courtroom within, is an important component of the American adversarial tradition. The aura of neutrality that is inherent in the public courthouse is due in large part to the public's perception that the proceedings conducted there are under the control of an independent and impartial judiciary. That aura of neutrality and judicial impartiality contributes to and fosters the public's belief in, and, similarly, the public's own commitment to, impartiality in judicial

---

[1] Majority op. at 18.

proceedings.

*State v. Cavan*, 98 P.3d 381, 388–89 (Or. 2004).

In contrast, jurors walking into a building called "JAIL" are well aware that they are walking into a jail, a place where trials *do not* normally take place. They are immediately put on notice that something is different because they are not at the usual place—the courthouse. Turning again to the Supreme Court of Oregon, that court agreed with the concern that:

> Holding a trial within the walls of a facility designed to segregate violent or dangerous persons from the public at large implies that there is some need for security measures beyond those of a normal trial. . . . [T]he jurors could have inferred that the court elected to hold the trial at the prison for administrative rather than safety reasons. But the decision to hold a trial at a prison is such a departure from the ordinary course, and the risk of singling a defendant out in some impermissible way is sufficiently great[.]

*Id.* at 388 (quoting *State v. Cavan*, 59 P.3d 553 (Or. Ct. App. 2002)). It further explained:

> Unlike the public courthouse, prisons are . . . places that the public, as a general matter, is unlikely to visit. A jury's perception of the neutrality of the proceedings that attend a trial in the public courthouse obviously is diminished when the court convenes a trial within the environs of a prison[.]

*Id.* at 389. "[C]onvening a trial in a prison . . . and not in a courthouse forcefully conveys to a jury the overriding impression of a defendant's dangerousness and . . . by extension, his or her guilt." *Id.*

The Supreme Court of Washington followed suit, explaining the differences between courthouses and jails:

> "Reason, principle, and common human experience" tell us that the average juror does not take for granted a visit to a jail. The average juror does not frequent the jailhouse for the very reason that a jailhouse is not meant to be a public space. Unlike a courthouse, in which the public is welcome to—and in some instances is required to—conduct all manner of business, a jail serves a specific purpose not generally applicable to the public at large.
>
> . . . A jail . . . is singularly utilitarian. Its purpose is to isolate from the public

a segment of the population whose actions have been judged grievous enough to warrant confinement. Jail buildings are typically austere in character, and entrance is subject to heightened security. . . .

Given the character of a jail, a juror would not take a visit to the jailhouse for granted, nor would he or she be inured to the experience. A juror's experience with jail is very likely limited to what our societal discourse tells us of jails: they are high-security places that house individuals who need to be in custody. That the average juror would draw a corresponding inference from that experience is reasonable to surmise.

*Jaime*, 233 P.3d at 557 (internal citations removed).

Unsurprisingly, from their recognition of the effect holding a trial in a jailhouse or prison would have on a juror, both Oregon and Washington held that such a practice is inherently prejudicial and erodes a defendant's presumption of innocence. *Cavan*, 98 P.3d at 389; *Jaime*, 233 P.3d at 559; *see also State v. Lane*, 397 N.E.2d 1338, 1340–41 (Ohio 1979) ("The prison environment which is laden with a sense of punishment of the guilty within transmits too great an impression of guilt[.]").

To be fair, other courts have determined the presumption of innocence was not undermined where trials were held in jailhouses. *See Howard v. Commonwealth*, 367 S.E.2d 527, 531 (Va. Ct. App. 1988); *State v. Daniels*, 40 P.3d 611, 620 (Utah 2002); *State v. Kell*, 61 P.3d 1019, 1026 (Utah 2002); *Walley v. State*, 112 S.W.3d 349, 356 (Ark. 2003). But those courts did not simply conclude that having a trial in a jailhouse was simply not prejudicial. In *Howard*, although the trial took place away from the courthouse, it was not in the jail, either. It was held in an administrative building next to, but outside of, the prison compound. *Howard*, 367 S.E.2d at 532. Furthermore, the offense on trial was committed inside of the jail, so the jury would necessarily be told that the defendant was an inmate of the jail. *Id.* And the jury could have reasonably concluded that the trial's location was

due to efficiency and convenience to the defendant's specific trial, since the witnesses would be coming from the jail next door. *Id.*

In *Daniels*, in addition to considering several possible inferences that the jurors could have reached about why the trial was taking place in the jail aside from the impermissible inference that the defendant was dangerous or culpable (such as the fact that the offense took place inside the jail itself, and thus many of the witnesses and the crime scene, which the jury toured, were located there), the Utah Supreme Court emphasized the fact that the trial judge instructed the jury to not consider the trial's location as affecting the defendant's presumption of innocence. *Id.* at 619 n.3. It was also important to the court's ruling that the defendant was charged with committing a crime, while being imprisoned at the very prison the trial was being held at. In holding that the jailhouse trial did not undermine the defendant's presumption of innocence, the *Daniels* court was careful to limit its holding:

> In some cases it may be prejudicial to hold a trial in a prison courtroom; but to try an inmate in a prison courtroom for a violent crime alleged to have been committed inside a prison by a person incarcerated for a previous conviction does not per se present an unacceptable risk of bringing into play impermissible factors which might erode the presumption of innocence. However, we also point out that to hold a criminal trial in a courtroom located inside a prison or other correctional facility simply because a defendant is already incarcerated, or because to do so would be more safe or convenient, would also be error, absent adequate findings and compelling reasons. A case-by-case evaluation is necessary.

*Id.* at 620.

And in *Kell*, the Utah Supreme Court followed its *Daniels* decision, and found that there was no inherent prejudice in the defendant's prison trial because the jurors were asked in their juror questionnaires whether their ability to sit as a juror would be affected by having the trial in the prison. *Kell*, 61 P.3d at 1026. No juror that expressed reservations about the prison were selected to

sit on the jury. *Id.*

In *Walley*, the Arkansas Supreme Court considered whether there was actual prejudice from holding the trial at the jail.[2] It found no actual prejudice, because Walley was acquitted of one of the charges against him, he was convicted of a lesser-included offense, he did not receive the maximum sentence, and, notably, the trial court gave a curative instruction to the jury, telling the jury, "[u]nder no circumstances shall this be considered by you in arriving at your verdict or considered by you as evidence in this case." *Walley*, 112 S.W.3d at 599.

In this case, the trial court did not explain to the jury why the trial was being held at the jail, and the trial court gave no instructions to the jury to refrain from drawing the wrong inferences from it. Without any guidance to the jury explaining why the move from the courthouse was warranted, they were placed in an *unusual, uncommon experience*. It should go without saying that they would have noticed the difference, and they reasonably would have entertained several inferences about why things were different.

I believe our peers in Oregon and in Washington got it right,[3] and the court of appeals was right to follow their lead. The majority, however, declines to follow at least *Jaime*, because in the Court's view the Washington Supreme Court had misapplied *Holbrook v. Flynn*, 475 U.S. 560 (1986).[4] But as the majority explains, when *Flynn* upheld the posting of additional uniformed state

---

[2] The appellant Walley did not provide authority in his briefing to support his inherent prejudice argument. *Walley*, 112 S.W.3d at 599.

[3] And of the courts that upheld the use of jailhouse courtrooms, those cases are distinguishable. They turned upon the specific facts of those cases, such as the fact that the offense occurred at the jail or prison itself, and the fact that the trial court gave curative instructions to the jury.

[4] Majority op. at 24.

troopers in the courtroom, the Supreme Court considered "reason, principle, and common human experience," and believed that a case-by-case approach was appropriate to determine whether Flynn's presumption of innocence was undermined. *Id.* at 569.

The specific facts of *Flynn* show why the Supreme Court found no violation there. Flynn's trial involved six defendants on trial for armed bank robbery, and he took issue with the posting of four additional state troopers who were simply sitting quietly in the front row of the gallery section behind the defendants, on top of *six officers and two deputy sheriffs* that were *already* posted in the courtroom. *Id.* at 562, 570.

And importantly, the Supreme Court in *Flynn* emphasized that "the question must not be whether jurors actually articulated a consciousness of some prejudicial effect, but rather whether 'an unacceptable risk is presented of impermissible factors coming into play.'" *Id.* at 570 (quoting *Estelle v. Williams*, 425 U.S. 501, 505 (1976)). The question asks: what is the risk? Assessing the "risk" necessarily means that it is not an all-or-nothing deal. There is a chance; there are, among the wide range of inferences a juror might reasonably draw, both prejudicial and non-prejudicial inferences. What a court must do is evaluate the odds and determine whether the risk is unacceptable, rather than find whether the jury could draw innocent or benign conclusions and therefore find the practice acceptable. This is illustrated in *Flynn* itself: the Supreme Court considered the risk and made a judgment call about the odds of an unacceptable result, "Four troopers are *unlikely* to have been taken as a sign of anything other than a normal official concern for the safety and order of the proceedings." *Id.* at 571 (emphasis added).

Consequently, the fact that the Washington Supreme Court in *Jaime* found an unacceptable risk of an improper inference does not mean that court misapplied *Flynn*. To the contrary, that court

followed the script laid out by *Flynn* in considering a starkly different situation: holding a trial in a jail, rather than the posting of additional law enforcement in Flynn's specific courtroom.

In my view, holding Appellant's trial in the Medina County Jail carried an unacceptable risk to Appellant's presumption of innocence. It was obvious to the jurors that Appellant was being held and not transported to the regular courthouse. The court of appeals was right to conclude that "the various markings reminding the jury that the building at issue here has a primary purpose as a jail created an unacceptable risk that the jury would conclude, before hearing any evidence, that Nixon is too dangerous to transport and must be isolated from society." *Nixon v. State*, 674 S.W.3d 384, 396 (Tex. App.—San Antonio 2023). That is the same implication as visible shackles or jail clothes, and I would find the same constitutional harm.

I would uphold the judgment of the court of appeals. Because this Court chooses to reverse, I respectfully dissent.

Filed: November 20, 2024
Publish